Pechner *v.* The Phœnix Insurance Co.

---

ISIDOR PECHNER *v.* THE PHŒNIX INSURANCE COMPANY.

(GENERAL TERM, THIRD DEPARTMENT, JUNE, 1872.)

To entitle a defendant to removal of a cause into the United States Circuit Court, under the act of 1789, § 12 (1 Stat., 79), he must show the plaintiff a citizen of another State on the day of the commencement of the action. A petition for removal does not meet this requirement by stating that the plaintiff is a citizen of another State.

Nor is it sufficient if the plaintiff appear to be a resident in the State; he must be shown a citizen as well.

General agents of an insurance company have authority to waive a condition that other insurances shall be indorsed on its policies.

An examination of the policy issued by the company by its agent in connection with other policies on the insured property, and his assertion to the insured that the insurance is valid,—*Held*, a waiver of the requirement that the other insurances shall be indorsed.

So, also, failure of the general agent to object to the omission of the indorsement of other insurances upon notice thereof, on consenting to an assignment by the assured or renewal, is a waiver of the condition.

Assent in such case to certain insurances extends also to new and different insurances in lieu of them taken at their expiration for the same aggregate amount.

THIS action was brought to recover a loss arising under a policy of insurance issued by the defendant through its agency at Elmira, to D. Strauss & Co., on the 31st day of March, 1864. By its terms the defendant agreed to insure the assured against loss and damage by fire to the amount of $2,000, on their stock of goods contained in the building known as 157, on the south side of Water street in Elmira. This policy contained the statement: "Other insurances $2,000." The insurance commenced at the date of the policy, and extended to the 31st day of March, 1865. The policy contained the provision, that "If the assured shall have, or shall hereafter make, any other insurance on the property hereby insured, or any part thereof, without the consent of the company written hereon, this policy shall be void." The insured had other insurance on the same property amounting to the sum of $5,500.

During the year mentioned in the first renewal of the policy, the assured sold out the property insured and assigned the policy itself to the plaintiff. At that time, according to the testimony of Strauss, he and the plaintiff called upon Perry & Scott, who were admitted to be the local agents of the defendant at Elmira, in order to secure consent for the transfer of the property and the policy to the plaintiff, and its continuance as an insurance to him. This witness testified that he had the other policies with him, all the four policies, and told Scott he had sold out to the plaintiff, and "wanted him to sign over these policies; so he said all right, and Pechner took the policies, all four policies, and gave them to him, and told him he wished him to see if they were all correct; he wanted to be sure about it, and took his and signed it over, and Scott took the policies and examined them; he opened them and looked at them, and took out his and made the transfer of it; he wrote his consent on the back of it, and Pechner asked him to see whether I charged him too much for the policies; he said he could not read; and Scott looked at them, and Mr. Scott told him I charged him somewhere about right." "When Scott examined the poli-

cies and handed them back he said, there, you are all right; now, this is all you want, and we went off." "Scott said we had to go to Ayers with the other policies and get his consent." Upon his cross-examination the witness testified: "We didn't say anything about consenting to $5,500 other insurance when we called on Perry & Scott to get their consent to the assignment of this policy. When I got my renewal in March, 1865, I said nothing about the other insurance I had on my property." "I never asked Perry & Scott to consent to this $5,500 other insurance."

The plaintiff was also sworn and examined concerning the same interview and transaction. He said that Strauss took the four policies when they went to Perry & Scott's office. That Strauss there said to Scott: "Mr. Scott, I have sold out that stock of goods to Mr. Pechner; there is the policy on the goods Mr. Pechner bought of me. Will you please pick out yours from the policies and sign it over to Mr. Pechner; and so Mr. Scott took the policies and opened them, and I asked Mr. Scott, will you please look them over and see if they are all right, because I can't read English, I can read newspapers, but not writing, so I leave it to you to see if everything is all right; and Scott looked them over and signed this policy over to me, and folded them up and gave them back to me and said, 'Mr. Pechner, these policies are all right;' Scott said we must have the other policies signed over too."

The agent, Scott, testified that he consented to the assignment of the policy in suit, but in substance denied the evidence of these witnesses, that he had examined the other policies and declared the policies to be right.

The policy in suit was renewed by those local agents by a written renewal in the usual form made use of for that purpose, on two different occasions. First to Strauss & Co., on the thirty-first day of March, 1865, for one year, and secondly to the plaintiff, at the expiration of that time, for one year from the thirty-first day of March, 1866, and the premium received for each renewal. At the time of the last renewal,

the plaintiff testified that he had the four policies together, that he handed them to Scott to see when they run out, and he opened all four of the policies to see when they ran out. This witness also testified that he removed to another store in April, 1866; that he went to Scott to secure his consent, and that Scott then took the four policies and wrote down in each the number of the store. The body of the policy in suit contains a consent to the removal.

The other policies issued to Strauss & Co. were in the Northwestern Insurance Company, for $1,000; in the Home, of New York, for $3,000, and the other in the Hartford Insurance Company, for $1,500. They were issued by Ayers, as agent, and when they expired he issued three other policies to the plaintiff in their place, with his consent. These other policies are as follows: One in the North American Insurance Company for $2,000, one in the Arctic Insurance Company for $1,500, and one in the National Insurance Company of Boston for $2,000. The plaintiff testified that some time in the summer he took these new policies to Scott, and asked Scott if these insurances were good and all right. He opened them and looked them over, and said they were all right. Scott denied the statements of the plaintiff detailing the interview claimed to have been had with him concerning these new policies, as well as those relating to the three policies in the other companies.

A loss within the terms of the policy was shown to have been sustained by the plaintiff during the year included in its renewal to him.

The defendant also showed that an application had been made, at the time of its appearance in the action, for the removal of the cause to the Circuit Court of the United States on the ground that the parties were citizens of different States. This application was denied. And the defendant insisted that the court lost jurisdiction of the action by the making of that application.

Various exceptions were taken to the rulings of the court during the progress of the trial at the Circuit, and also to the

charge. The jury found for the plaintiff; and the defendant's exceptions were ordered to be first heard at the General Term, and judgment in the meantime suspended.

*J. B. Perkins,* for the defendant.

*S. B. Tomlinson,* for the plaintiff.

Present—P. POTTER, P. J., PARKER and DANIELS, JJ.

DANIELS, J. The petition upon which the application was made for the removal of this action into the United States Circuit Court, stated that the suit was commenced by the service of a summons and complaint, on or about the first day of June, 1867. And it afterward avers that the plaintiff *is* a citizen of the State of New York. The petition is dated the eleventh, and it was sworn to on the twelfth day of June, in the year 1867. These averments did not show the plaintiff to have been a citizen on the day when the action was commenced; and that should have been shown to have been the fact to entitle the defendant to the removal of the action into the United States Circuit Court. (1 U. S. Statutes at Large, 79, § 12.) He might very well have been a citizen on the day when the petition was dated, and still not have been so when he commenced his action. Such changes are by no means uncommon under the naturalization laws of the United States. The statement made in the oath to the complaint, describing the plaintiff as of Chemung county, does not change the case. For he could have been of that county and a resident in it without being a citizen of the State. It is not every resident in the State that can properly be designated as one of its citizens. That term must be limited to such residents as, in addition to the fact of residence, possess the rights and privileges of citizens. But even if the statement should be held to an allegation of citizenship, it would not advance the position of the defendant. For the complaint contained in the case does not appear to have been sworn to until the fifth of June, in the

year 1869, nearly two years after the action was commenced.

The jurisdiction of the court was clearly unaffected by the proceedings taken for the removal of the cause. And the defendant's exception depending upon the ruling made concerning that portion of the case must, therefore, be overruled. (*Holden* v. *Putnam Fire Ins. Co.*, 46 N. Y., 1.)

Under the evidence which was given in the course of the trial showing the agency of Perry and Scott, they were the defendant's general agents, for they appear to have been authorized to transact all its business in Elmira. (*Lightbody*. v. *North Am. Ins. Co.*, 23 Wend., 18 ; *Carroll* v. *Charter Oak Ins. Co.*, 40 Barb., 292 ; *Post* v. *Ætna Ins. Co.*, 43 Barb., 351.)

And being general agents, they had, under the established law of the State, authority to waive the requirement contained in the policy, that other insurances should be indorsed upon it in order to sustain its validity as an insurance upon the property of the assured. (*Frost* v. *Saratoga Mutual Ins. Co.*, 5 Denio, 154 ; *Ames* v. *N. Y. Union Ins. Co.*, 14 Y. Y., 253 ; *Siddle* v. *Market Fire Ins. Co.*, 29 N. Y., 184 ; *Boehen* v. *Williamsburgh Ins. Co.*, 35 N. Y., 131 ; *Carroll* v. *Charter Oak Ins. Co.*; *Post* v. *Ætna Ins. Co.*, *supra*.)

The evidence given by Strauss and the plaintiff, as witnesses, if it was entitled to credence, showed sufficient to constitute such a waiver. And for that reason, notwithstanding their contradiction by the witness Scott, the court could neither nonsuit the plaintiff nor direct a verdict in favor of the defendant. Their evidence showed an examination and inspection of all the policies by Scott, one of the agents, under circumstances requiring him to determine whether they were valid or not. And he pronounced them to be valid, including the one issued by the defendants, which could not have been the case unless he designed to waive, on behalf of the defendant, the requirement that the other insurances should have been indorsed upon it. If the jury believed these two witnesses, as by their verdict they appear to have done, then the defendant did through its agent have notice of the other

Pechner *v.* The Phœnix Insurance Co.

insurances which Strauss & Co. procured upon the property, and beyond that effectually waived the condition which made the validity of the policy dependent upon the written consent of the defendant to such other insurances.

But even if there was no express waiver, but a mere notice of those insurances, the objection to the omission to indorse them was substantially waived on three distinct occasions. First, by the consent to the assignment of the policy in suit from Strauss to the plaintiff, then by the renewal of the policy to the plaintiff on the thirty-first of March, 1866, and again by the consent given the plaintiff to the removal of his stock from one store to the other, in the following month of April. If the agent at these several times knew of the other insurances which had been issued to Strauss & Co., those acts of themselves were sufficient to waive the want of the indorsement. (*Carroll* v. *Charter Oak Ins. Co.*, 40 Barb., 292; *Sherman* v. *Niagara Fire Ins. Co.*, 46 N. Y., 526.)

Assuming, as may properly be done, from the verdict rendered by the jury, that the agent had notice of the existence of the other policies and waived the objection to the omission to have them indorsed upon the policy in suit, then the fact that new policies were taken out in lieu of the others, at the time when they expired, will not prevent a recovery by the plaintiff, even though the new policies were not brought to the notice of the defendant or its agent. For by the previous waiver, the defendant surrendered its right to object to the maintenance of that amount of other insurance upon the same property. As to that extent of other insurance, the defendant by its waiver had indicated its approval, and the plaintiff was at liberty to continue it in the companies issuing the policies to Strauss & Co., or in any other companies that might enjoy his confidence. It was in substance and effect a consent that other insurance might be held upon the property to the amount mentioned in the other policies issued to Strauss & Co. without the procurement of their indorsement. That was the fair and reasonable import of the act, and it was probably so understood by the plaintiff when he received the new poli-

cies in the other companies. By these policies no change was made in the aggregate amount of the insurance upon the property, and the defendant had no interest which could be prejudiced by the want, or promoted by the fact, of notice that they had been taken. (*Benjamin* v. *Saratoga Mutual Ins. Co.*, 17 N. Y., 415.) In *Brown* v. *Cattaraugus County Mutual Ins. Co.* (18 N. Y., 385), the policy contained a clause rendering it void if the insured had any other insurance against loss by fire on the property, not notified to the defendant, and further declaring that if he should make any such insurance and should not, with all reasonable diligence, give notice to the secretary and have it indorsed, the policy should cease. It appeared in the case that the plaintiff obtained another insurance from the Ontario and Livingston Mutual, on the 9th of July, 1855. But the plaintiff proved that this was in renewal of a previous insurance which expired June 20, 1855. And the court held that this insurance was not within the terms or spirit of the provision requiring notice of other insurance afterwards procured.

This authority must be conclusive upon this point; for it can make no substantial difference in the case, whether the subsequent policies for the amount previously insured are issued by the same or by other insurance companies. They are no more other insurances in the one case than they are in the other. In the authority referred to, that was greater reason than any which can be found in the present case for holding the new policy to be another insurance, for it was not issued until nineteen days after the first had ceased to exist.

In view of this conclusion, it can hardly be important to inquire whether the court was right in the last direction given to the jury. But if it should be deemed to be so, no doubt can be entertained as to the propriety of that direction. Immediately preceding it, the court had been calling the attention of the jury to the three new policies which had been procured by the plaintiff and the effect of what was supposed to have been the interview in the summer concerning

them between him and the agent, Scott. And as to those policies, the judge observed: "If Scott saw the policies and knew the meaning of them, and said it was all right, the plaintiff can recover." As an abstract legal proposition, no fault can be found with this direction, for by the term "it," reference appears to have been made to the policy in suit. That clearly seems to have been the case, from what had been observed just before this statement was made. If he did see the policies, and then knowing the others were not indorsed upon the one in suit, pronounced that all right notwithstanding the omission, it exhibited a clear purpose to waive the condition. Because, without such a design, he could not properly or truthfully have declared the policy in suit to be all right. And that would ordinarily be understood as the effect of the words made use of by the agent

Whether the evidence given relative to that circumstance was sufficient to justify the submission of that inquiry to the jury, was a question not made upon the trial. And for that reason, it need not be, and indeed cannot be, considered upon the present disposition of the case. No exception was taken presenting that precise point.

The exception taken to the question whether Scott knew that the witness had other insurance with Ayers, the agent of the other companies, cannot be sustained, even though the question should be deemed to be improper in point of form. For it was important, as a fact, to prove that Scott did have that knowledge. But no suggestion was made showing that the question put to the witness was objected to as being formally improper. If that had been done, the inquiry could at once have been so modified as to have deprived it of all objectionable features. As the objection was made, even if the question was in form improper, it was too general to be allowed to prevail at this time. (*Fountain* v. *Pettee*, 38 N. Y., 184.)

The exceptions taken to the evidence offered, to prove the waiver of the condition requiring other insurance beyond the two thousand dollars mentioned in the body of the policy to

be indorsed upon it, have already been disposed of, in sub-stance, by the consideration of that evidence as being properly before the court and jury. This evidence did not contradict the contract made between the parties, but merely tended to show the performance, or observance, of the condition by the assured to have been dispensed with after the policy was issued and delivered. Its object was to prove a subsequent modification of some of the terms of the contract, which can always be done, even by oral evidence and without a new con-sideration. (*Blanchard* v. *Weeks*, 38 N. Y., 225.)

No reason exists for interfering with the result in this case, and the defendant's motion for a new trial should be denied, and judgment ordered for the plaintiff on the verdict.

New trial denied.