RISLEY v. INDIANAPOLIS, BLOOMINGTON AND WESTERN RAIL-ROAD COMPANY, appellant.

*Removal of cause to Federal court — Agency — corporations not liable on unauthorized contracts of president — contracts by officers for their own benefit.*

An application by a corporation for the removal of a cause from a State to a Federal court must show that the parties were citizens of different States at the time the action was commenced.

The president of a railroad company entered into a contract with the plaintiff that the company would pay him a certain sum for procuring contractors to enter into a contract to construct and equip its road. He procured such contractors. The charter of the company gave the control of its affairs to a board of directors, but did not, nor did the by-laws, authorize the president to bind the company by his contracts. The president was not authorized by the directors to make the contract, nor had they any knowledge of it. *Held*, that the company was not liable on the contract.

The president of a railroad company made a contract with contractors for the construction of the road for the sum of $5,000 per mile, to be paid in bonds, but afterward agreed to increase the amount to $6,500 per mile in consideration that the additional $1,500 be divided between the contractors, the president and the plaintiff. The $1,500 per mile was to be paid the contractors by the company when they had laid the iron. The directors of the company ratified the contract, but without any knowledge of the agreement as to the division of the $1,500. The contractors gave an order on the company in favor of the plaintiff for his share of the bonds under the agreement as to the division, in terms payable out of the $1,500 per mile; which order the company accepted. Afterward, and before the iron was laid, the contractors assigned their contract to the president of the road, who completed it. In an action by the plaintiff to recover the bonds under the order, *held*, (1) that the company was not liable, since the $1,500 per mile, against which the order was drawn, was not payable until the contractors had laid the iron,

which they had not done; and, (2) that the assignment to the president inured to the benefit of the company, and that in completing the contract the president acted as trustee for the company.

APPEAL from a judgment entered in favor of plaintiff, on the report of a referee.

The action was brought by John E. Risley against the Indianapolis, Bloomington & Western Railway Company to recover the sum of $50,000, and also the value of certain bonds.

The defendant company was a consolidation, duly made according to law, in 1869, of the Danville, Urbana, Bloomington & Pekin Railroad Company, and the Indianapolis, Crawfordville & Danville Railroad Company. By the act of consolidation the defendant company assumed all the liabilities of the constituent roads.

It appeared from plaintiff's case that in 1867 he entered into a contract with Clark R. Griggs, who was at that time president of the Danville, Urbana, etc., railroad company, wherein it was stipulated that the company would pay plaintiff the sum of $50,000 provided he would procure contractors who should enter into a contract to construct and equip its road, and that he did procure such contractors. One Samuel C. Wilson, who was president of the Indianapolis, Crawfordville, etc., railroad company, and a director in the corporation of which Griggs was president, conducted the negotiations between Griggs and plaintiff.

It further appeared that after plaintiff had secured the contractors, the said Griggs, as president of said railroad, entered into a contract with them to construct and equip the road for the sum of $5,000 per mile, to be paid in county, city and town bonds; and that the said Griggs afterward agreed to increase the amount to $6,500 per mile on condition that the contractors would divide the excess over $5,000 with himself, the plaintiff and said Wilson. By the terms of the contract the $1,500 per mile was not to be paid until the contractors had laid the iron. This contract was ratified by the board of managers of said railroad, but without knowledge of the private agreement as to the division of the $1,500. The contractors thereupon gave to the plaintiff, as well as to Griggs and Wilson, an order on the company for $10,000 in bonds, being his part of the spoils under the agreement as to the division. The order was in terms payable out of the last $1,500 per mile. This order was accepted by the company, and to recover the value of these bonds is a part of the relief demanded. The contractors, after partly fulfill-

ing their contract, assigned it to the said Griggs, then president of said road, who completed the road.

The defendants denied the authority of said Griggs to bind the company by his contract with plaintiff, and also denied their liability for the bonds.

The referee reported in favor of the plaintiff on both claims, and a judgment was entered thereon.

*Edmund Wetmore,* for appellant.

*James Clark,* for respondent, cited as to the validity of the contract, *Supervisors* v. *Schenck,* 5 Wall. 772; *Knox County* v. *Aspinwall,* 21 How. (U. S.) 539; *Gelpcke* v. *City of Dubuque,* 1 Wall. 203; *Bissell* v. *City of Jeffersonville,* 24 How. (U. S.) 288; *Pratt* v. *Hudson River R. R. Co.,* 21 N. Y. 305; *Farmers & Mechanics' Bank* v. *Drovers' Bank,* 16 id. 125: *Welland Canal Co.* v. *Hathaway,* 8 Wend. 480.

DANIELS, J. The application for the removal of the cause into the circuit court of the United States was properly denied, because it was not shown by the petition that the parties were citizens of different States at the time when the action was commenced, and the defendant, being a corporation, was not entitled to such removal upon any other ground. *Holden* v. *Putnam Fire Ins. Co.,* 46 N. Y. 1; *Plehner* v. *Phœnix Ins. Co.,* 6 Lans. 411, *Cooke* v. *State National Bank of Boston,* 52 N. Y. 96.

The contract, on which the decision of the referee allowed the plaintiff to recover the judgment appealed from, was made with the president of the Danville, Urbana, Bloomington, and Pekin Railroad Company, a railroad corporation at that time existing under the laws of the State of Illinois. This contract, as it was found to be proven by the evidence, was made on or about the 15th day of July, 1867. It stipulated for the payment, by the company to the plaintiff, of the sum of $50,000, for procuring contractors, who entered into a contract to construct and equip its railroad. At the same time, an order was drawn upon the president of the company by the contractors, in the plaintiff's favor, for county, city and township bonds, amounting to the sum of $36,666.66, bearing ten per cent interest, and accepted by the president, which the referee found was delivered to the plaintiff as security for the

payment of the amount claimed to be due him under the agreement.

The company made default in the payment of the bonds, upon the order, and the judgment was directed for that default as well as the non-performance of the contract. But the whole amount of the recovery does not exceed the sum unpaid upon the order. If the judgment can be sustained on either demand, it is right and must be affirmed.

The defendant, which, by the consolidation of the railroad company named and another having its terminus at the same place, succeeded to all the rights and assumed all the liabilities of those two companies, claims, in support of the present appeal, that it can be sustained upon neither ground, for the reasons which will now be considered.

The president, with whom the contract for the payment of the plaintiff was made, had no special or direct authority from his company to enter into an agreement of that kind. And no evidence was given, from which it could be inferred by the plaintiff that the company, whose officer he was, had either held him out, or permitted him to represent himself, as having authority of that kind.

The circumstance that he was president of the company was not of itself evidence of the existence of such authority, for it does not ordinarily appertain to the duties of persons acting in that capacity. He was at most the agent of the company, created and existing under a special legislative act defining the rights and privileges of the body, and the manner in which they should be enjoyed. This, the plaintiff is to be regarded as knowing. For all persons, dealing with the officers or agents of corporations, are bound to know that they act either under its charter or by-laws, or the usages which may be shown to exist, defining the extent of their authority. They must, in doubtful cases, acquaint themselves with the extent of that authority, or otherwise submit to the consequences resulting from their omission to do that. Angell & Ames on Corp. (4th ed.), §§ 291, 297; *North River Bank* v. *Aymar*, 3 Hill, 262; *Mechanics' Bank* v. *New York & New Haven R. R. Co.*, 13 N. Y. 599, 631, 634; *McCullough* v. *Moss*, 5 Denio, 567; *Adriance* v. *Roome*, 52 Barb. 399; *Dabney* v. *Stevens*, 40 How. 341, 345, 346.

The charter of the company gave the immediate government and direction of its affairs to a board of thirteen directors, having power

to elect one of their number president, a majority of whom constituted a quorum for the transaction of business. But it conferred no authority on the person who should be elected president, to bind the company by his contracts. His power, in that respect, appears to have been defined exclusively by the by-laws enacted by the company, and it was restricted to the management of all negotiations with other corporations, companies or individuals, touching their mutual interests and the claims of ·either party on the other, and to entering into or concluding all such agreements or contracts, with any of such parties as should be approved by the board of the executive committee. This entirely withheld the power to make contracts binding on the company, unless the approval of the executive committee was first obtained for that purpose. And it deprived him of the power of entering into the agreement which the referee, upon sufficient evidence, has found was made by him with the plaintiff for the payment of the $50,000.

The case of *Merchants' Bank* v. *State Bank*, 10 Wall. 604, was relied upon as sustaining the validity of all contracts entered into by officers of corporations. But it clearly could not have been intended by that decision, to sanction so broad an extension of the law affecting transactions of this description. Very broad propositions, it must be confessed, were stated in the opinion, but perhaps none too much so for the facts and evidence in the case which the court then decided. The one chiefly relied upon to sustain the contract in this case states the law to be, "that where a party deals with a corporation in good faith, the transaction not being *ultra vires*, and he is unaware of any defect of authority or other irregularity on the part of those acting for the corporation, and there is nothing to excite suspicion of such defect or irregularity, the corporation is bound by the contract, although such defect or irregularity in fact exists." Id. 644. But even this does not extend as far as the purposes of the plaintiff's case require, in order to sustain his recovery, for the president of the company was not invested with a defective or irregular authority to bind the company by his contracts. He had no authority whatever for that purpose. And where that is the case, and the officer has not been permitted to act as though he had the authority, there is nothing in that decision holding that he can bind the company.

But this proposition is inapplicable to the present case, because there was a circumstance brought to the plaintiff's knowledge,

according to his own evidence, which ought to have excited his suspicions that the president had no power to bind the company by the agreement; for he says that Griggs, the president, and Wilson, one of the directors acting with him, had not brought with them proper evidence of their authority to contract for the building of this and the other road, and it was decided that the execution of the contract should be adjourned over for them to go home, convene their boards of directors, and get them to do whatever was necessary to be done about the contract for building the roads. If they could not, for want of power, enter into contracts for the construction of the road, which was a substantial part of what the corporation was created to do, it is difficult to see how it could, with any propriety, be assumed that the power existed without any action of the board, which would authorize the president to make the contract with the plaintiff upon which he has been allowed to recover.

The fact that the president could not, without specific authority, bind the company by one agreement, should have been accepted as quite conclusive evidence of the same want of authority to render the other obligatory upon it. One was a fair inference from the other. And the plaintiff should be strictly held to all its legal consequences, because, as a lawyer, he may be deemed to be familiar with all legal rules applicable to his case.

The plaintiff, however, insists that the making of the contract for the construction of the road, and with the authority afterward conferred for that purpose by the company, in effect adopted and ratified the agreement which the president made with him for the payment of the $50,000. But that cannot be so, because there was nothing in the agreement made for building the road, by which even the existence of the one made with him was assumed. It in no way entered into the agreement for the construction of the road, and was not brought to the notice of the board of directors in any way whatever, and they cannot, with any propriety, be held to have adopted or ratified, by that act, another of an entirely different nature, which they knew nothing about.

The fact that it was brought to Wilson's notice, at the time when the agreement with the plaintiff was made, was not notice to the company, or the board of directors, for any such purpose. The board was the body which acted, and no notice was given to it of the president's attempt to bind the company for the payment of the

money to the plaintiff. Before one act can be accepted as the ratification or confirmation of another, the party acting must have some knowledge or information, at least, of its existence. *Brass* v. *Worth*, 40 Barb. 648 ; *Hays* v. *Stone*, 7 Hill, 128, 131, 132 ; *Keeler* v. *Salisbury*, 33 N. Y. 648; *Smith* v. *Tracy*, 36 id. 79.

Another circumstance relied upon as a ratification of the act, by which the agreement with the plaintiff was made, is the admission contained in the answer, that the order received by him was accepted by the company. But this admission is not sufficient for that purpose, because it in no way concedes that the order had any connection with the agreement.

It is not admitted that the order was drawn, accepted or received to secure the performance of the agreement, or that it had any relation whatever to it, or that the company knew any thing of it. The admission is that it promised, at the request of the contractors, to deliver the plaintiff the bonds, provided they became entitled to them by the performance of their contract; certainly no ratification of the agreement with the plaintiff can be inferred from such a promise. And there is nothing in the evidence extending its effect in that respect.

The order was drawn by the contractors who agreed to build the railroad, and it requested and directed the delivery to the plaintiff of a portion of the bonds which they were, by their contract, to receive by way of compensation for what they were to do in its performance.

It indicated a payment by them upon some obligation they had incurred to the plaintiff, instead of the securing or settlement of a demand existing in favor of the plaintiff against the railroad company.

Neither by the import or terms of the order could the company have inferred from it that it was given or accepted to secure any debt the plaintiff claimed to have against the company. And for that reason, as long as the company or its board of directors had no notice that it was to be held by the plaintiff as security for the payment of his demand, its acceptance or the promise admitted in the answer constituted no ratification or confirmation of that demand.

The circumstances under which the order seems to have originated exclude the presumption that notice of its purpose or use could have been given to the board of directors.

Wilson, who aided the plaintiff in procuring the contractors who were to build the road, and received an order himself for $10,000 of the county, city and town bonds, and who evidently had no motive to misrepresent the facts, was sworn and examined as a witness on his behalf. And in the course of his evidence he stated that the contractors agreed at first to build the railroad for $5,000 per mile, in county, city and town bonds, in addition to the other compensation it was agreed they should receive. And after that, without making any reduction in the other amount, the payment in those bonds was increased to $6,500 per mile. This, he said, was done at the instance of Clark R. Griggs, who was president of the company. And the object was to charge the excess upon the company for building its road, and through the contractors to divide that excess between himself, Wilson, a director and president of the other railroad company, the plaintiff, and the contractors.

And he stated that the division was so far made, at that time, as to have orders drawn for $120,000, in round numbers, by the contractors, one being in his own favor for $10,000, and the residue for equal amounts, one in favor of the president of the company, another in favor of Wilson, one of its directors, and the other in favor of the plaintiff. And these orders were then accepted by Mr. Griggs, and delivered to the persons who were to receive them, he receiving the one intended for himself.

This witness was corroborated in this statement by the evidence of the defendant's witness, Alton, who was one of the contractors.

For he says that the price in bonds was first fixed at $5,000 per mile for building the road, and afterward advanced, on the contractors learning that the work would probably prove more expensive than at first it was supposed to be, so that they should receive $200 or $300 more per mile in bonds. Then he said that Griggs said they could raise $6,500 per mile; that he understood how much the contractors were to have net, and that they were to pay a certain amount for himself, the plaintiff and others, of the bonds, as a commission or brokerage; and that it was arranged between Griggs, Wilson and Risley, that a certain portion was to be allowed to them.

He then added that he was very confident that in the arrangement he had with Griggs, it was not spoken of until it was arranged between them how it was to be divided. To carry it out, he stated that an order was first drawn for the entire $120,000, and accepted

by Griggs. But that was afterward divided into the four orders mentioned by Wilson, so that each could have his own share at once, without being at all dependent upon the honor which is supposed to exist in such cases, but, nevertheless, has sometimes proved to be disregarded. The circumstances very decidedly sustain the probabilities of these statements. For the orders were all made out by the plaintiff, signed by the contractors, accepted by Griggs, and distributed in the manner mentioned at the time when the contract was entered into.

The plaintiff, though afterward on the stand as a witness, made no attempt to deny these statements, but simply left the case upon his former evidence, in which he said that he did not know whether the contractors received any consideration for drawing these orders; and Griggs, while he denies being a party to any such arrangement, still admits that the orders were drawn, accepted and divided as the others stated they were, and that he received one for between $36,000 and $37,000. He also says that he did not inform the board of directors that he had received such an order, neither was the counsel of the company, who was with him in the city attending to the completion of the contract to build the road, informed of it, or of the arrangement made for this division of $120,000 of the bonds.

In view of the great improbability that the contractors would voluntarily have proposed to give away so large a portion of their compensation, if it had ever been designed that they should receive it as such, and the reasons which must have operated upon Mr. Griggs, by way of inducing him to deny his complicity in this piece of inexcusable knavery, the direct evidence of the two witnesses, swearing to the contrary, and the inherent probability of the truth of their statements, no reliance can be placed upon his denial.

The whole weight of the case is against him on this subject, and it must be concluded that, for a consideration he provided the contractors with, he enabled them to compensate himself and Wilson for a shameless violation of the duties which the confiding stockholders and directors had intrusted them with performing. After being implicated in that misconduct, no reason could exist for supposing that he would so far explain the matter to the board of directors as to secure any action of theirs amounting to a ratification of that portion of the transaction in which the plaintiff was allowed even the appearance of profiting. And, certainly, his own acceptance of the orders as president of the company could be

attended with no such result. For as long as he had no authority to make the agreement to pay the plaintiff the $50,000 for procuring the contractors, he was equally without authority to bind the company by a ratification of it. *Marsh* v. *Fulton County*, 10 Wall. 676.

The remaining question in the case is, whether the company was shown to be liable to the plaintiff upon its admitted promise to pay the bonds on the order. The answer denies that liability. By the contract, the $1,500 per mile, which was added to the first amount which the contractors were to receive in bonds, did not become payable until the ties and iron were laid upon the road. And the bonds, payable by the terms of the order, were to be paid "out of the $1,500 per mile," which, pursuant to the contract, "was to become due and payable to the contractors upon laying the iron on the railroad."

This order, with its acceptance, was conditional upon the performance of the contractors, extending so far as to lay the ties and iron upon the road. It was for the payment of the amount mentioned in it, out of the sum to become due and payable to the contractors who drew it, when they laid the iron upon the road.

That, the proof showed, they never did. And the amount, stipulated for that service, accordingly, was never earned by them.

Soon after they took the contract, they failed in its performance, and surrendered and assigned it to Mr. Griggs, the president of the company, and he afterward went on and performed it. This performance was not made in their interest, or for their account, but entirely independently of them, and for his own benefit, so far as that could be done by him as an officer of the company whose interests he was bound to promote and protect.

They were not entitled to any part of the compensation earned by this performance, and the plaintiff, as their assignee under the order, stood in no better situation. For he was only to receive, according to the terms of the order, a portion of what should become due and payable to the contractors, pursuant to their contract, when the iron should be laid upon the track. And, as nothing ever did become due or payable to them for that, on account of their failure to perform, or to procure the performance by any other person in their behalf, the plaintiff has no valid claim against the company under the terms of the orders received by him.

And besides that, as the assignment of the contract was made to the president of the company, and he afterward constructed the

railroad under it, while occupying that position, he did it substantially as the company, and not as the contractors' assignee; what he did, was a trustee for the company and its stockholders. *Butts* v. *Wood*, 37 N. Y. 317; *Coleman* v. *Second Avenue Railroad Co.*, 38 id. 201; *Ogden* v. *Murray*, 39 id. 202.

They, and not he, were entitled to the profit of what he did while acting as a director of the company, and the president of its directors. And it can make no difference in the plaintiff's favor if this officer, in the end, so far sacrificed his duties to his interests as to secure from the company, for what he did, the unlawful stipend of bonds, put into the contract, at his instigation, and in part for his profit. For the plaintiff has shown no title to them, and no right to require compensation for the amount of his order from the company.

He may be entitled to a reasonable compensation for his services and advice in aiding the president of the company, as his counsel, in making the contract executed by the contractors, and approved by the company (*Hooker* v. *Eagle Bank of Rochester*, 30 N. Y. 83), but that cannot sustain the present judgment, for it forms no basis of its recovery.

As the case now stands, there seems to be no theory upon which this judgment either can or ought to be sustained.

It should, therefore, be reversed, and a new trial ordered, with costs to abide the event.

DAVIS, P. J., and LAWRENCE, J., concurred.

> *Judgment reversed and new trial ordered.*