## BRABIN *vs.* HYDE.

Where one purchases goods of another, agreeing to apply the amount agreed on as the price, in payment of a precedent debt, by giving credit therefor, the transaction, so long as it rests in mere words, is void by the statute of of frauds; but is valid the moment the act of giving the credit is performed by the buyer.

B. being indebted to H., it was agreed between the parties that H. should take certain property of B., which was pointed out and the price of which was agreed on, and credit B. the sum specified as the price, upon his books. This was done by H. as soon as he got home, where his books were kept, which was during the same day and within a very short time after the making of the agreement. *Held* that this was to be regarded as a payment made at the time of the agreement, within the meaning of the statute of frauds; and was a complete execution and performance of the contract, on the part of H., and a payment of B.'s debt, to the extent of the price agreed on.

The moment payment is made, in pursuance of such an agreement, the transaction is taken out of the statute of frauds, the party is bound by his bargain, and he cannot afterwards rescind it, or treat it as a nullity.

THIS action was brought to recover the possession of a bay mare and colt, and damages for the detention thereof. The defendant, by his answer, admitted the detention of the property, and claimed the right to detain it, as the owner thereof. That he became such owner by virtue of a sale and delivery of the same, theretofore made by one Milton Blackmer to him; and that said Blackmer, at the time of such sale and delivery, was the true and lawful owner of the property, and that such use and detention was by virtue of the defendant's ownership; and that the plaintiff, by legal process, on or about the 4th day of September aforesaid, took said property from the possession of the defendant, and yet kept possession of the same. On the trial, the value of the property was proved to be $175. The material facts, bearing upon the principal question examined by the court on this motion, were detailed by the defendant, who was examined as a witness. He testified that in July, 1857, he was, and for some time previous had been, a merchant, in Mumford; that at that time Blackmer owed him $216 or $226. "I went to Black-

mer's place, and wanted him to pay me. He said it was just before harvest, and he could not. I told him I was going to the west, and wanted to fix it up before I went; wanted an indorsed note, or a chattel mortage. He declined giving a chattel mortgage because it would have to go on file, and would hurt his credit. He said he would sell any thing on the farm; then talked about different property; spoke of the black colt; he did not want to sell it, but he would sell me the bay mare he got of Augustus Harmon, and the colt. He wanted $200; I wanted to give $150. We finally agreed upon $175 for the mare and colt. He then wanted to know whether I would honor a few orders to his men, if he paid the balance promptly. I told him I would give him credit on my books, when I got home, for $175. He said that would be right. I then told him my grass was not a good crop on the meadows, and asked him what he would take to let the mare and colt run in the lot till the 1st or 15th of September. I went down and examined the property, and then went home and made the entry in book, giving him credit for the $175; made the entry on the same day of the purchase; it is the original entry. He wanted to know whether I was going to put it on the notes or book; I told him it would be on the book; told him if he wanted to settle he could strike out the balance on the books and put the balance on the notes I held against him. He said that would be right. He pointed out the mare and colt in the lot. I knew them before I went away, on the 8th or 10th of August."

It was proved that on or about the 18th of August, 1857, the defendant sent a couple of men who took away the mare and colt, while the same were in the possession of the plaintiff. The defendant afterwards admitted that he had taken away the animals, and claimed that they belonged to him. The plaintiff claimed the property by virtue of a purchase thereof from Blackmer, made in August, 1857. The jury rendered a verdict in favor of the plaintiff, and assessed the value of the property at $175; and from the judgment entered thereon the defendant appealed.

*D. C. Hyde,* for the appellant.

*A. J. Wilkin,* for the plaintiff.

*By the Court,* JOHNSON, J. The principal question in this case arises upon the charge of the judge to the jury, that the contract for the sale of the animals in question, between the defendant and Blackmer, was void by the statute of frauds.

Assuming, as we must, for the purpose of examining this question, that the version of the transaction given by the defendant in his testimony is the true one, I think the learned judge was mistaken in his view of the law applicable to the case. According to this statement, the price was agreed upon and the property pointed out. Blackmer (the owner) was indebted to the defendant, and it was agreed between them that the defendant should take the animals and credit Blackmer the price agreed upon, upon his books, which the defendant did as soon as he got home, where his books were kept. His residence was about one mile from Blackmer's, and the credit was entered the same day, and within a very short time after the agreement. This was clearly, I think, a payment of Blackmer's debt, to the extent of the price agreed upon and credited. It was a complete execution and performance of the contract on the part of the defendant. The contract was by parol, and was not binding until the price agreed upon was paid. The statute declares such a contract void, unless the buyer shall accept and receive the goods, or some part thereof, or shall at the time pay some part of the purchase money. Here the agreement and credit were obviously all one transaction. *The time* was continued until the credit was given, as the parties evidently contemplated that the defendant was to go to where his books were kept, before entering the credit. It must therefore be regarded as a payment made at the time, within the meaning of the statute. But, were it otherwise in this respect, the moment payment is made, in pursuance of the agreement, the transaction is taken out of the statute, even if it was within

it before. It may be true that as long as the agreement rested in mere words, Blackmer might have put an end to it by rescission, or giving the defendant notice that he would not be bound or perform on his part. But having waited until the act of giving the credit agreed upon was performed, he was bound by the bargain, and could not thereafter treat it as a nullity. The cases of *Artcher* v. *Zeh*, (5 *Hill*, 200 ;) *Clark* v. *Tucker*, (2 *Sandf. S. C. Rep.* 157 ;) *Ely* v. *Ormsby*, (12 *Barb.* 570 ;) and *Walker* v. *Hussey*, (16 *Mees. & Wels.* 301,) hold that where goods are purchased, to be applied in payment of a precedent debt, by indorsement or credit, the payment is not made, within the contemplation of the statute of frauds, until the indorsement is actually made, or the credit given, or the goods are receipted in payment. But these cases all concede that when the agreement is consummated by the act of indorsement, or entry of the credit, according to the agreement, the transaction is no longer within the statute. As long as such a transaction rests in mere words, it is void, but is valid the moment the act of giving the credit is performed by the buyer.

The judgment must therefore be reversed, and a new trial ordered, with costs to abide the event.

[Monroe General Term, December 5, 1859. *T. R. Strong, Welles* and *Johnson*, Justices.]