## SOLMS v. RUTGERS FIRE INSURANCE COMPANY.

June, 1867.

Reversing 8 Bosw. 578.

The mistake of naming one who has no interest, as the insured in a policy of fire insurance, is cured by an indorsement, made by the secretary with notice of such mistake, stipulating that the loss, if any, is to be payable to a mortgagee named.

A recovery may be had in the name of the real party in interest in such a case, for the indorsement may be regarded as a new contract of insurance with him.*

---

* See Wolfe v. Security Ins, Co., 39 N. Y. 49; Shearman v. Niagara Fire Ins. Co., 46 Id. 526, affirming 2 Sweeny, 470.

It is not essential to the validity of a contract of insurance that the insured should be named in the policy. If the name of the one for whose benefit the insurance is made does not appear upon the face of the policy, or if the designation used is applicable to several persons, or so imperfect that it can not be understood alone, extrinsic evidence may be resorted to, to ascertain the meaning of the contract. And when thus ascertained, it will be held to apply to the interests thus ascertained to have been intended to be covered by it, and those persons are to be deemed to be comprehended within it, who were in the minds of the parties when the contract was made. Clinton v. Hope Ins. Co., 45 N. Y. 454; affirming 51 Barb. 647; see also Noyes v. Hartford Fire Ins. Co., 54 N. Y. 668. Thus an insurance for the benefit of the estate of A. may be shown by extrinsic evidence, to have been for the benefit of both administratrix and heirs. Clinton v. Hope Ins. Co. (above); and see Savage v. Howard Ins. Co., 52 N. Y. 502; reversing 44 How. Pr. 40; 43 Id. 462.

So, where the owners of property procure a policy for their own protec-

Henry Solms sued defendants, in the New York superior
court, as assignee of Mary Entwistle and Charlotte Quisse, to
recover on a policy of fire insurance.

In April, 1866, Charlotte Quisse, owner of the property in-
sured, in Westchester county, sent her husband, A. H. Quisse,
to obtain such insurance, and gave him fifty dollars to pay the
premium. He went to New York, and applied to the Stuyve-
sant Insurance Company for the whole amount of insurance,
informing them that it was to be insured for Charlotte Quisse,
who owned the property. The policy was to be afterward de-
livered. The company accepted the risk, and received from
him the premium. The Stuyvesant Company, not wishing to
assume the whole risk, applied to the defendants, who agreed
to insure twenty-one hundred dollars of the amount.

The next day or e Burnett, who was an insurance broker

---

tion, they may recover thereon, although the policy be expressed to be
for the benefit of whom it may concern.  Mayor, &c. of N. Y. *v.* Hamil-
ton Fire Ins. Co., 10 *Bosw.* 537; affirmed on another ground in 39 *N. Y.* 45.

So, where there is a valid oral agreement, for insurance, and the policy
issued and accepted contains material errors, and the premium is paid at
less than the rate agreed and authorized, the original agreement may be
sustained to indemnify the insured.  Bunten *v.* Orient Mut. Ins. Co., 8
*Bosw.* 448; affirmed on another point in vol. 1 of this series, p. 257.

But as to a mistake of the agent in not cancelling the policy when di-
rected to do so,—see Goit *v.* National Protection Ins. Co., 25 *Barb.* 189.

In Hughes *v.* Mercantile Mut. Ins. Co., 55 *N. Y.* 265, reversing 44 *How.
Pr.* 351, it was—*Held,* that although a mistake, in this case, in the name
of the vessel insured, would be no obstacle to a recovery, if both the
parties, in fact, had the same vessel in view, and the insurers, when the
policy was issued knew the true name, or intended to insure the vessel lost;
yet when there is a mistake as to the vessel sought to be insured, and the
policy is upon another vessel than that for which application was made,
no contract exists, as the minds of the parties did not meet.  The fact
that the insurers were put upon inquiry, which they neglected to make,
does not alter the case.

In Bodine *v.* Exchange Fire Ins. Co., 51 *N. Y.* 117, it was—*Held,* that
the agent of an insurance company has implied power to delegate to his
clerk, authority, within the scope of the agency, and the acts of the clerk
will accordingly bind the company.

both for the Stuyvesant Company and the defendants, and in the employ of both for the purpose of procuring applications and negotiating policies, and who acted for the defendants in this respect, in procuring the insurance in question, made a survey of this property, at the request of the Stuyvesant Company. Burnett knew that the property was owned by Mrs. Quisse, and on this occasion was informed that the insurance was desired by her, as both Mr. and Mrs. Quisse testified. Burnett testified that Quisse said he wished the insurance in his own name. Before the policy was issued, Burnett, with the assent of the Stuyvesant Company, informed the defendants of the application, who agreed to take half the risk, and paid Burnett for procuring the insurance. The name of the person insured was written " A. H. Quisse," in both policies. The Quisses were Germans, and ignorant.

About a week afterwards, A. H. Quisse, the husband, called again, and the Stuyvesant Company gave him two policies upon the property, one for two thousand one hundred dollars, executed by the defendant, and one for nineteen hundred dollars, executed by itself, both insuring A. H. Quisse, the husband, instead of Charlotte, the wife. A. H. Quisse did not know this, but spoke about there being two policies, when he expected but one; but was assured defendants' company was good, and that it was all right, and he took the policies.

On November 7 the mistakes in the policies were first discovered by Charlotte and A. H., when Charlotte was called upon for additional security for certain mortgages given by her. She then authorized an attorney to procure them to be corrected, and to have, in addition, the losses made payable to the respective mortgagees—the policy in question being intended for the benefit of Mary Entwistle. The attorney's clerk proceeded with the policy in question to the defendants' office, and presented the same to defendants' secretary, and informed him that the property in question belonged to Mrs. Quisse, and that she wanted the loss, if any, made payable to Mrs. Mary Entwistle. The secretary, without making any verbal reply, and without correcting the name of the insured in the policy, indorsed on the policy the loss payable as requested, and re-

turned the policy to the clerk, who received it, supposing it all right.

After a loss by fire, Charlotte Quisse and Mary Entwistle each assigned their claim to the plaintiff, who brought this action.

Upon the trial the only defense was that the insurance was to the husband, and the title was in the wife. The cause was tried before a jury, and the judge, upon the plaintiff's proofs, dismissed the complaint upon defendants' motion, to which plaintiff excepted.

*The superior court* affirmed the judgment, on the ground that there was no evidence that defendants were informed, at or before issuing the policy, that Mrs. Quisse was the owner; and the facts raised a presumption that when requested to correct the policy in this respect, they either did not understand the request or refused it. Reported in 8 *Bosw.* 578.

Plaintiff appealed.

*Thomas Darlington,* for the plaintiff, appellant;—Cited Kelly *v.* Commonwealth Ins. Co., 10 *Bosw.* 82; *Angell on Ins.* §§ 35, 68, and cases cited; Whitaker *v.* Farmers' Ins. Co., 29 *Barb.* 312; McEwen *v.* Montgomery Co. Ins. Co., 5 *Hill,* 101; Sexton *v.* Same, 9 *Barb.* 191; Masters *v.* Madison Co. Ins. Co., 11 *Id.* 624; Bunten *v.* Orient Ins. Co., 8 *Bosw.* 448; *Greenl. on Ev.* §§ 291, 301, and the cases there cited; 10 *Bosw.* 82, before cited; Carpenter *v.* Mutual Safety Ins. Co., 4 *Sandf. Ch.* 408; Lightbody *v.* N. A. Ins. Co., 23 *Wend* 18; *Code,* § 275; Emery *v.* Pease, 20 *N. Y.* 62; New York Ice Co. *v.* Northwestern Ins. Co., 23 *Id.* 357; Marquat *v.* Marquat, 12 *N. Y.* (2 *Kern.*) 336.

*Livingston M. Miller,* for the defendants, respondents;— Cited Barker *v.* Marine Ins. Co., 2 *Mas.* 369: Graves *v.* Boston Marine Ins. Co., 2 *Cranch,* 419; De Forest *v.* Fulton Fire Ins. Co., 1 *Hall,* 84; Grosvenor *v.* Atlantic Ins. Co., 17 *N. Y.* 391.

GROVER, J.—The plaintiff showed no right to relief upon the ground that there was a mistake in making out the policy

originally by the defendant. Although the evidence showed that the application made for insurance upon the property, to the Stuyvesant Company, by A. H. Quisse, was for insurance in behalf of Charlotte Quisse, the owner of the property, yet there was no evidence tending to show that any such application was made by that company to the defendants, nor but that the defendants made the policy in strict accordance with the application and agreement entered into. It is clear that no recovery could be had upon the policy as made, because A. H. Quisse was the party thereby insured, and he had no interest in the property, either at the time of making the insurance, or at any time thereafter, and consequently had sustained no loss, and therefore had no claim for indemnity.

The ground entitling the plaintiff to relief, if any, was the presentation of the policy to the defendants' secretary, by the clerk of Thorne, the clerk at the time informing the secretary that Charlotte Quisse owned the property, and wanted the loss, if any, made payable to Mary Entwistle. The secretary must be presumed to have understood this, as there was no contradictory evidence. The taking the policy and making an indorsement thereon making the loss payable as requested, without expressing any dissent to regarding the policy as a valid one in behalf of Charlotte Quisse, the owner, must be regarded as an agreement on his part to make a valid policy to her upon the property. The company had already received the premium for a valid insurance upon the property, to the amount expressed in the policy. It had executed and delivered a policy, supposed to be valid, but which, through mistake, probably of the Stuyvesant Company, was a mere nullity. This transaction with the clerk, unexplained, required the finding of an agreement by the defendant to insure Charlotte Quisse, the owner of the property, in consideration of the premium already received.

Whether the secretary supposed the policy was made to her originally, as the assured, and believed the remark of the clerk, that she owned the property and desired the loss made payable to Mrs. Entwistle, to show that the change in that respect was desired by the assured; or whether, through inadvertance, the correction was omitted, does not appear, nor is it

material.   At any rate, the assent of the secretary to an agreement to insure Mrs. Quisse does appear.

It is well settled that an agreement by parol to insure, and to make out a policy, when the terms are all understood, is binding upon the insurer, and will be enforced in the courts. In this case, I think, this agreement of the secretary was a valid contract, binding upon the company, and that, as the evidence stood at the time of the motion to dismiss the complaint was made, the plaintiff was *prima facie* entitled to recover.   The judge, therefore, erred in dismissing the complaint.

The judgment should be reversed, and a new trial ordered.

HUNT, J. [After stating above facts.]—I think the judgment is erroneous.  Mrs. Quisse paid to the defendants her money for an insurance upon her property.  The defendants received her money, intending so to insure her, and supposing they had insured her to the amount of two thousand one hundred dollars.  If they had any knowledge of the error, and intended to receive or to retain her money, allowing her to suppose that she had a valid insurance, when they understood it to be otherwise, they were guilty of a fraud which will afford them no protection.  That the mistake of the name was a mere mistake, and that it was the mistake of the defendants' agent, Burnett, was proven by the testimony of both Mr. and Mrs. Quisse.  On a nonsuit, all disputed facts are to be assumed in favor of the plaintiff.  This is, therefore, to be assumed as the true state of the case.   Burnett knew that the property was that of Mrs. Quisse, and was informed, while examining the same on behalf of the defendants, that the insurance was desired in the name of Mrs. Quisse.  The defendants knew, not only what the property was, its nature and character, but knew who made the application, and who was the party desiring the insurance.  The knowledge of their agent was the knowledge of the defendants.   McEwen v. Montg. Co. Ins. Co., 5 *Hill*, 101; Masters v. Mad. Co. Ins. Co., 11 *Barb.* 624; Bunten v. Orient Ins. Co., 8 *Bosw.* 449; affirmed court of appeals.*  I think all these circumstances

---

* Reported in vol. 1 of this series, p. 257.

establish a contract on the part of the defendants with Mrs. Quisse, and that if the property had been destroyed, intermediate the receipt of their portion of the premium by the defendants, and the issuing of their policy, the defendants would have been liable to her for the two thousand one hundred dollars. The evidence of Mr. Quisse, who testified that he made the application to the company in that form, and of Mr. and Mrs. Quisse, who testify that they so informed the defendants' agent while he was examining the premises, and the retention of the money by the defendants with that knowledge, gave all the essentials of a valid contract of insurance in favor of the party so applying and paying. Kelly v. Com. Ins. Co., 10 *Bosw.* 82; Whitaker v. Farmers' Ins. Co., 29 *Barb.* 312; *Angell on Ins.* § 35, and cases cited; Johnson v. Talman. in court of appeals, not reported.

The transaction which took place when the error was discovered, I think also relieves the case from its difficulty. It is not pretended that there was any error in the character of the risk, the amount of the premium, or, at that time, in the name of the individual to be insured. The defendants were distinctly informed that there was an error in the name of the party insured; that it should be Charlotte Quisse, instead of A. H. Quisse; that the former was the owner of the property; and they were desired to correct it, or to make a suitable memorandum upon the subject. They made a memorandum, consenting to the assignment desired, but containing nothing on the subject of the erroneous name of the person insured, and handed back the policy. It was distinctly proven that they were informed of the error at this time. What was the intention, and what was the legal effect of this return of the policy, with a consent indorsed that the loss should be paid to Mary Entwistle? The intent could honestly be no other than to redeliver the policy after this information, and to insure anew the property described. If the defendants can be supposed to have reasoned with themselves that "there was an error, we will say nothing about it, we will keep the premium and avoid a liability if a loss should occur," the well-settled principles of law and morality would compel the indemnity to the party claiming. The defendants will be compelled to perform the

contract, as they allowed the other party to understand it, and to suppose that they understood it. I doubt not that the intention of the defendants in returning the policy to Mrs. Quisse's agent, uncorrected, after being advised of the error, was to reissue and redeliver the same, disregarding the error, and such was its legal effect. The act of the defendants was either a trick unworthy of a respectable company, or it was a statement to Mrs. Quisse that she might regard her policy as valid, notwithstanding the error, and that if any loss occurred it should be paid to Mrs. Entwistle, in the same manner as if the correct name were therein inserted.

On this point the argument in the court below was to the effect that these acts were only proof, either that the defendants did not understand that any request was made to them to alter the policy, or, if they did so understand it, they refused it, as they had a right to do. The evidence was distinct that the request was made to the secretary of the company, and there was no pretense, in fact, that it was not understood. If the secretary has so testified, a question would have been presented for the consideration of the jury, and if they had found with the defendants on that question, it would have ended the point. Neither is it just to say that if they did understand it, the company refused the request to make the alteration, as they had a right to do. On the contrary, they assumed to grant it, allowed and induced the assured to understand that the matter was entirely satisfactory to them, and never intimated a refusal or dissatisfaction, until called upon to make good the loss. If they had refused the correction, the assured could have supplied the want by a new insurance. They did not, however, refuse. and cannot now justify themselves on that ground.

I think a new trial should be ordered.

All the judges concurred.

Judgment reversed, and new trial ordered, costs to abide the event.