NORMAN PITNEY, Respondent, *v.* THE GLEN'S FALLS INSURANCE COMPANY, Appellant.

Where, by a policy of fire insurance, a portion of the loss is made payable to a third person, " as his interest may appear," the language imports an ownership in the property in such third person, to the extent of his interest the insurance is for his benefit, and he or his assignee may maintain an action upon the policy in case of loss. (LOTT, Ch. C., and EARL, C. dissenting.)

In an action upon the policy, parol evidence is admissible to show the nature and extent of the interest of such person. (LOTT, Ch. C., and EARL, C., dissenting.)

Those persons are deemed to be included in the policy who were in the minds of the parties when the contract was made.

*Dumas* v. *Jones* (4 Mass., 647), *Bidwell* v. *N. W. Ins. Co.* (19 N. Y., 179), *Grosvenor* v. *A. F. Ins. Co.* (17 N. Y., 391), distinguished.

Questions as to the meaning of particular words used in a special sense in a written instrument, are for the jury.

Where insurance is effected by an agent for a principal known to the insurer but not named in the policy, the agent becomes a trustee of an express trust, within the meaning of section 113 of the Code, and an action may be brought upon the policy, either in the name of the principal or agent. (LOTT, Ch. C., and EARL, C., dissenting.)

Where a policy of insurance, issued to and upon personal property owned by tenants in common, contains a condition avoiding it in case of other insurance upon the same property, not consented to by the insurer in writing upon the policy, a policy issued to one of the tenants in common, without mention therein of the joint ownership, is other insurance within the meaning of said clause.

Defendant's general agent, who had authority to accept applications and to issue policies, issued a policy to plaintiff containing such a condition. The application therefor was signed in blank and was filled out by said agent, he having in his hands at the time other policies upon the property, obtained through him as agent of another company. No mention

thereof was made in the application or upon the policy. Defendant is a stock company. In an action on the policy, *held* (LOTT, Ch. C., and EARL, C., dissenting), that such agent had authority to waive the condition; that the circumstance authorized a presumption that the agent had notice of the other insurance, and justified a submission of that question to the jury; and that if it was found that the policy was issued with notice, this was a waiver of the condition, or it might be treated as an estoppel, prohibiting the defendant from insisting upon the forfeiture.

Also, *held*, that the agent, in filling up the blank application, was acting within the scope of his authority, and if by his fault or negligence it contained a material misstatement not authorized by the applicant, the wrong was to be imputed to the insurer, not to the insured.

Some authorities explained on a distinction taken by them between the authority of general agents of stock and mutual insurance companies; agents of the former being deemed to have larger powers than those of the latter.

*Brewer* v. *C. M. F. Ins. Co.* (14 Gray, 203) distinguished.

One of the prior policies was renewed after the issuing of the policy in suit. *Held* (LOTT, Ch. C., and EARL, C., dissenting), that this was not other insurance, within the meaning of the condition, but a mere continuance of an existing insurance.

The property insured was a quantity of wool. Prior to the loss plaintiff contracted orally to sell his interest to one who was owner in common with him of certain lots of the wool, but not of all. The wool was to be weighed, sorted, etc., and delivered at a specified place. Payment was to be made by crediting the amount on an existing debt. *Held*, that there was no transfer of interest valid under the statute of frauds; and that the fact that plaintiff supposed at the time that the title was transferred did not affect his right to recover on the policy.

(Argued September 29, 1874; decided January term, 1875.)

APPEAL from a judgment of the General Term of the Supreme Court in the third judicial department affirming a judgment in favor of plaintiff entered upon a verdict. (Reported below, 61 Barb., 335.)

The action was brought upon a policy of fire insurance. The defence was, that certain warranties in the policy had not been complied with. It was also claimed that the ownership of the goods insured had been parted with, so that the insured had no interest at the time of the loss.

The policy in question was issued November 2, 1865, and insured plaintiff " against loss or damage by fire to the amount

of $1,200 on 2,400 pounds of wool, in horse-shed on George McKie's farm, Cambridge." The policy was issued by the defendant's agent, one Bowen, living at Cambridge, who was supplied by the defendant with blank applications and with blank policies. There was a clause in the policy to the following effect: "Provided that if any other insurance had been or should thereafter be made on the property, and not consented to by the defendant, in writing, on the policy, then the same should be void."

The policy was granted upon an application of the insured, partly written and partly printed, which was, in terms, made a part of the contract, and a *warranty* on the part of the insured. In the application there was the following interrogatory: "Is the property now insured?" To this the answer was, "No." Another question was: "Have you the title to the premises?" The answer was: "The applicant owns the wool." To another interrogatory, "Is there any other party interested in the property, or who claims any title to or interest therein," there was no answer.

It appeared in evidence that this application was signed in blank by Pitney, the plaintiff, and was afterwards filled up by Bowen. After the policy was issued to the plaintiff, it was shown, under the defendant's objection and exception, that he (plaintiff) sent it back to Bowen, the agent who issued it, to have it corrected. This was on account of the fact that George N. Pitney, son of the plaintiff, owned an undivided portion of the wool, as tenant in common with the plaintiff and others, amounting to about 1,050 pounds, and he (plaintiff) had forgotten to have the son's name inserted. Bowen thereupon inserted the following clause in the policy: "In case of loss, if any, one-half payable to George N. Pitney, as his interest may appear." The policy as thus corrected was returned to the plaintiff. The plaintiff had no wool which he owned alone. He had a share of four different lots of wool — one-quarter of 2,005 pounds; one-half of 1,324 pounds; one-half of 1,065 pounds; one-half of 1,173 pounds. His whole interest, as calculated in pounds, was about 2,282¼.

There was evidence that the plaintiff had, at the time of issuing the defendant's policy, other insurance on wool in the same building, without any mention in the policies of joint ownership. There were two policies issued to him by the City Fire Insurance Company of Hartford, Connecticut, amounting to $1,300. It was claimed by the defendant that these policies attached to the same property as was covered by their own contract, and that it was a case of " other " insurance within the meaning of the condition in its policy. One of the Hartford policies was issued October 13, 1865, for $800, for a period of six months, and was renewed until April 13, 1867, three days after the fire. The other was issued July 10, 1866, for $500. It was renewed after the policy now in question was issued, viz., January 10, 1867, for six months. The insurance was thus renewed without the defendant's consent or knowledge, other than that possessed by Bowen. There was also evidence that, at the time of the application to the defendant for insurance, the plaintiff delivered to Bowen three policies, two in the City Fire Company, and one in the defendant's company, the latter being issued through the agency of one Bristol; of this, the policy in litigation was substantially a renewal. This was the only evidence to show that Bowen knew that the defendant had other insurance on the property. Bowen was the agent of the City Fire Company to take applications, and had taken them in the case of these policies, though he had no authority to, and did not issue the policies or the renewals. He requested the plaintiff to leave these policies with him. At the same time, the plaintiff did not tell Bowen that the Hartford insurances were on the same property as that of the defendant, and Bowen testified that he did not know it. In March, 1867, and prior to the fire, an oral agreement was made by the plaintiff with Francis S. Thayer, to the effect that Thayer should purchase the plaintiff's wool at fifty-six cents a pound. The price was not to be paid in money, but to be credited on a debt due to Thayer from the plaintiff, larger in amount than the price of the wool. The wool was to be weighed and

sacked. This was not done; nor was any receipt or other evidence of payment given by Thayer to the plaintiff. It was claimed by the defendant that the result of this transaction was to divest the plaintiff's title. The plaintiff supposed that his title and interest passed to Thayer, and that he had no interest at the time of the fire. The wool in the building, with the exception of 1,090 pounds, was burned on April 9 or 10, 1867. After the fire, and before the commencement of the action, George N. Pitney assigned all his claim against the defendant to the plaintiff.

At the close of the plaintiff's case, a motion was made for a nonsuit. The motion was denied, and the defendant excepted.

The case was submitted to the jury under a charge of the judge, to which sundry exceptions were taken. These, as well as certain exceptions to evidence, are considered in the opinion, wherein other facts also are stated.

*Stephen Brown* for the appellant. Plaintiff cannot recover even if the agent knew or had constructive knowledge of the other insurance. (62 Barb., 636; *Barrett* v. *U. M. F. Ins. Co.*, 7 Cush., 175; *Pendar* v. *Am. M. Ins. Co.*, 12 id., 469; *Carpenter* v. *Prov. W. Ins. Co.*, 16 Pet., 495; *Gilbert* v. *Phœnix Ins. Co.*, 36 Barb., 372; *Ripley* v. *Ætna Ins. Co.*, 30 N. Y., 136; *B. S. E. W.* v. *Sun M. Ins. Co.*, 17 id., 405; *Fabyan* v. *U. M. F. Ins. Co.*, 33 N. H., 203; *Hale* v. *M. F. Ins. Co.*, 6 Gray, 169; *S. C. M. Ins. Co.* v. *Hurd.*, 19 Ohio, 149; *Kimball* v. *How. F. Ins. Co.*, 8 Met., 33; *Bigler* v. *N. Y. C. Ins. Co.*, 22 N. Y., 402.) If defendant's policy was valid it was made void by the renewal in the Hartford company. (*Brady* v. *N. W. Ins. Co.*, 425, 444; *Hart. F. Ins. Co.* v. *Walsh*, 54 Ill., 164; *Ludwig* v. *J. C. Ins. Co.*, 48 N. Y., 383; *Burt* v. *People's M. F. Ins. Co.*, 2 Gray, 397; *Forbes* v. *Ag. M. Ins. Co.*, 9 Cush., 471; *Wilson* v. *Gen. M. Ins. Co.*, 14 N. Y., 422; *Godin* v. *London As. Co.*, 1 Burr., 489; *M. S. Ins. Co.* v. *Hone*, 2 Cow., 235, 240; *Ætna Ins. Co.* v. *Tyler*, 16 Wend., 385; *Mussey* v. *At. M. Ins. Co.*, 14 N. Y., 79; *Ogden* v. *E. R. Ins. Co.*, 50 id., 390; *Blanchard*

v. *At. M. F. Ins. Co.*, 33 N. H., 16; *As. F. Ins. Co.* v. *Assum*, 5 Md., 165; *Shurtleff* v. *Phœnix Ins. Co.*, 57 Me., 137; *Hutchinson* v. *West. Ins. Co.*, 21 Mo., 101; *Wash. Ins. Co.* v. *Hayes*, 17 Ohio, 432.) The statements of the application as to other insurance and the ownership of the wool were warranties. (*Jennings* v. *C. Ins. Co.*, 2 Den., 75; *Glen. Co.* v. *Pro. Ins. Co.*, 21 Conn., 19; *Wilson* v. *Her. Co. Ins. Co.*, 2 Seld., 53; *Ripley* v. *Ætna Ins. Co.*, 30 N. Y., 136; *Houghton* v. *Man. Ins. Co.*, 8 Met., 114; *Le Roy* v. *Market F. Ins. Co.*, 39 N. Y., 90; 45 id., 80.) The verbal testimony, as to what was said between the agent and plaintiff at and before the issuing of the policy, should have been excluded. (*Lamatt* v. *H. R. F. Ins. Co.*, 17 N. Y., 199; *Barrett* v. *U. M. F. Ins. Co.*, 7 Cush., 175; *Gilbert* v. *Phœnix F. Ins. Co.*, 36 Barb., 372; 12 Cush., 469; 30 N. Y., 136; 47 id., 114; 2 Den., 75; 16 Pet., 496; *Mumford* v. *Hallett*, 1 J. R., 433.)

*Job G. Sherman* for the respondent. The application having been filled up by defendant's agent after plaintiff had signed it, misstatements in it are the fault of defendant and cannot be taken advantage of. (*Rowley* v. *Emp. Ins. Co.*, 36 N. Y., 550; *Plumb* v. *Cat. Co. M. Ins. Co.*, 18 id., 392; *Devendorf* v. *Beardsley*, 23 Barb., 656; *Carrol* v. *C. O. Ins. Co.*, 40 id., 292; *Hopkins* v. *Mont. Co. M. Ins. Co.*, 43 id., 213.) Defendant is bound by the knowledge its agent had of the other insurance. (3 Keyes, 557; 34 Barb., 213; 40 id., 292; *Ames* v. *N. Y. U. Ins. Co.*, 14 N. Y., 253; *Pierrepont* v. *Barnard*, 5 Barb., 364; 2 Seld., 279; *McEwent* v. *Mont. M. Ins. Co.*, 5 Hill, 101; *Sexton* v. *Mont. M. Ins. Co.*, 9 Barb., 191; *Wilson* v. *Gen. M. Ins. Co.*, 14 N. Y., 418; *Sherman* v. *Nia. F. Ins. Co.*, 40 How. Pr., 401.) Plaintiff was entitled to put in evidence all the papers on which defendant acted in renewing the policy. (*Rawles* v. *Am. M. L. Ins. Co.*, 27 N. Y., 282; 36 Barb., 357.) Evidence of conversations of the parties to the contract, prior to its completion, was proper. (*Pollen* v. *Le Roy*, 3 N. Y., 594; 10 Bosw., 28.) Geo. Pitney had a right to assign his interest in the loss and

the wool to plaintiff.    (40 Barb., 292; *Goit* v. *N. P. Ins. Co.*, 25 id., 189; *Courtney* v. *N. Y. C. Ins. Co.*, 28 id., 116.)

DWIGHT, C.   No question was made on the argument in this court as to the sufficiency of the preliminary proofs in this cause, nor was there any claim of fraud.   The questions in controversy between the parties were narrowed down substantially to three: 1. Can the plaintiff recover as assignee, or in behalf of his co-tenant, George N. Pitney?   2. Can he recover the insurance on his own undivided interest, assuming that he was owner at the time of the fire?   3. Does the proof show that he was owner, or did he by his oral contract transfer his interest in the subject-matter of the insurance to Thayer?

I. The policy, as originally drawn, was made to cover solely the interest of Norman Pitney, the plaintiff.   There appears at that time to have been no intimation of joint ownership of the wool.   Subsequently, an interview was had with Bowen, the defendant's agent, in which it was stated to him that the plaintiff had forgotten to mention that his son had an interest in the wool, and that his interest was to be covered by the insurance.   Bowen, at first, thought that it would be necessary to make out a new policy.   He finally determined to insert the clause, " in case of loss, if any, one-half payable to George N. Pitney, as his interest may appear."   The policy, as corrected, then read as follows, as far as the insuring clause is concerned : " By this policy of insurance   *   *   *   the Glen's Falls Insurance Company do insure Norman Pitney, of Cambridge, against loss or damage by fire to the amount of $1,200 on 2,400 pounds of wool, in horse-shed on the George McKie farm, Cambridge.   In case of loss, if any, one-half payable to George N. Pitney, as his interest may appear."

The court, at the trial, admitted evidence, under objection of the defendant, to show that George N. Pitney was tenant in common, and that the intent of the parties was to have that interest insured.   It was claimed that such parol proof

was inadmissible as affecting a written instrument. The defendant, in this contention, overlooks the words "*as his interest may appear.*" If the words had simply stood, " in case of loss, if any, one-half payable to George N. Pitney," the meaning would apparently have been that the insurance was made solely on Norman Pitney's property, and that one-half of the loss was to be paid over to the plaintiff's nominee instead of to himself. But when the words " as his interest may appear" are added, something more seems to be intended. The language, though informal, points to an ownership in the wool of some kind. What interest is intended is not specified. The entire clause must be construed, and parol evidence is admissible to place the court in the situation of the parties so as to be able to ascertain what interest George Pitney had, and thus what interest belonging to him was intended to be covered by the policy.

It will readily be conceded that there are authorities to the effect that if one joint owner insures for himself and his co-owner, without mentioning the latter's name, and without any knowledge of him on the part of the insurers, no action will lie in that person's favor. (*Dumas* v. *Jones,* 4 Mass., 647.) In that case, no representation was made to the underwriter by the insured that he had a partner. The contract being made with the insured, and apparently on his sole account, it was held that it was not competent for him to recover on the policy beyond the value of his own interest. This case went upon the ground, which it is unnecessary to impugn, that the insurer has a right to know for whom as well as with whom he contracts, his calculations depending not unfrequently on a knowledge of the character of those whom he undertakes to indemnify.

The reason of this case does not apply if there be any thing on the face of the policy to indicate that a party has an interest in the subject-matter of the insurance. If the words thus employed be ambiguous, or if the designation be so imperfect that it cannot be understood standing alone, extrinsic evidence may be resorted to in order to ascertain the meaning. Those

persons are deemed to be included in the policy who were in the minds of the parties when the contract was made. (*Clinton v. Hope Ins. Co.*, 45 N. Y., 454; affirming S. C., 51 Barb., 647.) It is said by Denio, J., in *Bidwell v. North-western Company* (19 N. Y., 182), "that there is much greater latitude in applying a policy of insurance to the interest intended to be covered by it, than in other written contracts, and in general if it is said to be on account of a person, as agent, or for whom it may concern, the party who really procures the insurance and whose property it was intended to cover, may be shown." (Citing Arnould on Ins., note 25; see also 1 Phillips on Ins., 163; *Colpoys v. Colpoys*, Jacob, 541; *Burrows v. Turner*, 24 Wend., 277; *Newsom v. Douglass*, 7 H. & J., 417.) It was conceded by all parties, in *Turner v. Burrows* (5 Wend., 541), that if the insurance had been in truth on joint account, and the policy had been "on account of whom it may concern," the fact might have been shown by collateral proof, and the policy then have the effect intended by the joint owners and understood by the insurer. The rule is clearly laid down in the case of *The Sunderland Marine Insurance Company v. Kearney* (16 A. & E. [N. S.], 925). The court there held that though there was no precise description in the policy, yet the insurer, in point of law, covenanted to pay the persons interested in the subject-matter, and for whom the policy was effected, and that the true party in interest could be ascertained by extrinsic evidence under the rule, *id certum est quod reddi potest.*

The case of *Bidwell v. North-western Company* (19 N. Y., 179) is not opposed to these views. The rule already considered was recognized, but there was no extrinsic evidence to be applied. In the same case (24 N. Y., 302) extrinsic evidence was declared admissible in accordance with the remarks of Denio, J., cited *supra. Grosvenor v. Atlantic Fire Insurance Company* (17 N. Y., 391) also turned on an express clause in the policy, without any extrinsic evidence. The policy named the owner of goods as the person insured, and made the loss, if any, payable to the mortgagee. It was held that the con-

tract was with the owner alone, and that the mortgagee was a mere nominee to receive the money. This case is no authority for the one at bar where the additional words, as "interest may appear" are found, and extrinsic evidence was introduced to show the interest intended to be insured. In *Mussey* v. *Atlas Mutual Insurance Company* (14 N. Y., 79) the policy was issued to Mussey on account of himself and others, as their "interest may appear." It was held that it covered those by whose direction it was effected and for whose benefit it was intended to be made (pp. 83, 84). Assuming that the evidence was admissible, it was abundant to show the intent of the parties to insure the interest of George N. Pitney.

The application had been signed in blank, and was filled out by Bowen in the plaintiff's absence. When Norman Pitney went for the policy, he saw it did not cover that of his son George, and then told him that part of it belonged to him. Bowen suggested that he could buy his son's wool. He made an effort to do so, but failed. He then sent the policy back by Harvey Burch, his son-in-law, to Bowen to have the necessary alteration made. Burch testified that he handed the policy to Bowen, and stated to him that Norman and George N. Pitney requested him (Burch) to take the policy to Bowen, and to state that they wanted to have the policy so fixed that George's interest would be insured. Bowen at first thought that he would have to send it to the office, but finally said that he could fix it, and inserted the clause already quoted from the policy. The testimony also showed that George's interest was that of a tenant in common with his father, and its amount and value were fully proved. In the subsequent portions of this opinion, it will appear that Bowen was a general agent of the defendant, and had sufficient authority to make the alteration under consideration. The clause may be regarded as a new contract with the real party in interest. (*Solms* v. *Rutgers' Fire Ins. Co.*, 4 Abb. Ct. App. Dec. 279; S. C., 3 Keyes, 416, Opin. of Grover, J.) There was sufficient consideration for this agreement, as, had it not been made, the plaintiff would have had an equitable right to a return of a proportionate part of

the premium, as he would not have had sufficient interest for all the policies to act upon, and the overpayment would be regarded as a mere mistake in the haste of transacting the business.

On these grounds the plaintiff, as assignee of George N. Pitney, may recover to the full extent of his loss, there being no other insurance on his interest. His cause of action and the assignment of the same were sufficiently set forth in the complaint. That commences, by stating that for another and further cause of action against the defendant, under and by virtue of the policy of insurance, which was annexed and referred to, there is a clause in the following words, etc. The clause in question is set out. It is then averred that George had an interest in the property, as owner, to a specified amount; that it was destroyed by fire; that all the conditions of the policy were fulfilled, including notice and preliminary proof of loss; that the policy was assigned to plaintiff for a valuable consideration, and the defendant is justly indebted to the plaintiff as such assignee in a specified sum. This pleading is sufficient under section 162 of the Code, which allows a party to set forth a copy of the instrument under which he claims, and to specify the amount due.

The objection to a passage in the charge of the judge to the jury on this branch of the case is not well founded. He said: " Taking the words of the contract alone, independent of surrounding circumstances, the fair and legitimate construction of the language of the contract would be not that George Pitney was insured for his own property, but he would receive a portion of the money going to Norman Pitney, according to any interest that George Pitney may have in the property." This sentence was not objected to by the defendant, as it was more favorable to him than he had any reasonable ground to expect. The judge added: "But in giving construction to this instrument, it is proper for you to look at the surrounding circumstances for the purpose of seeing what the parties intended, and if the defendant intended to contract that George Pitney's interest in that wool, together with the

interest of the plaintiff in it, should be insured, and if the circumstances surrounding the transaction satisfy you that that was the intention, you will have the right to say so, and to give such construction as those circumstances require." This part of the charge was objected to as leaving a question of construction of a written instrument to the jury, when it should have been disposed of by the judge. This passage must be read in connection with other parts of the charge where he stated that he charged, as *matter of law*, that if, from the surrounding circumstances, they believed that it was the intention of the parties that the contract should read as an insurance of both Norman and George Pitney's interest in the wool, they had a right to say so, and the plaintiff could recover. Taking the whole subject together, the judge, when he said that the jury could give "such construction as the circumstances might require," only meant that they could give such construction to the *circumstances* as they thought proper as modifying the legal construction of the instrument which they must take from him, independent of those circumstances. It was one of those frequent instances of the unguarded use of language to which every judge is subject in the haste and excitement of a trial at Circuit, and to which attention should be called specifically by counsel, pointing out the precise bearing of the objectionable matter, in order to found an exception upon it; instead of that, the defendant simply excepted "to so much of the charge as stated that if the jury were satisfied from surrounding circumstances *and the words of the contract*" (the meaning of which the judge had already laid down to the jury independent of those circumstances) "that it was the intention of George Pitney and the defendant to insure George's interest, then they may find that fact," the defendant's counsel claiming that no question of construction could be submitted to the jury.

This last proposition of the counsel was much too large. It is well settled that questions as to the meaning of particular words used in a special sense in a written instrument are for the jury. The judge might well refuse to follow the counsel

upon a statement so broad and unqualified. It is not true that *no* question of construction can be submitted to a jury.

This subject may also be considered from another point of view. Assume that by force of the policy, taken as a whole, the contract of the company to insure George Pitney is made not with him, but with Norman Pitney, in his behalf, and that it was so understood by the parties, Norman Pitney is then but an agent for an unnamed though known principal, to the extent of George Pitney's interest. Norman Pitney then becomes trustee of an " express trust," under section 113 of the Code, as being one " with whom a contract is made for the benefit of another." (*Considerant* v. *Brisbane*, 22 N. Y., 389.) BAYLEY, J., in *Sargent* v. *Morris* (3 B. & A., 280), says : "An action on an insurance policy may be brought either in the name of the party by whom or for whom it is made." The same ruling is made in *Somes* v. *Equitable Insurance Company* (12 Gray, 531), *Williams* v. *Ocean Insurance Company* (2 Met., 303 ; 2 Phillips on Insurance, 1958). The defendant is thus placed in this dilemma : If the contract was made with George Pitney, the plaintiff may sue, as assignee ; if made with Norman Pitney, in behalf of George, the action may still be brought by the plaintiff, Norman. The present complaint would suffice for that purpose, the allegations as to assignments being rejected as surplusage, and all the necessary facts being before the court. The evidence on the subject of George Pitney's interest would, in that view, be legitimate, as the plaintiff would recover, as matter of law, on the very terms of the contract, as acting for his principal with the knowledge of the insurer. From every point of view, the claim of Norman Pitney, whether as assignee or trustee of George Pitney, is to be sustained.

II. The next question is, as to the effect of that clause in the policy which provides that if any other insurance had been or should thereafter be made on the property, and not consented to in writing, on the policy, then the same should be void.

The plaintiff claimed, on the argument, that this clause is not applicable to the case. He insisted that the interest insured in the Hartford companies was not the same interest as that insured by the defendant. The ground was, that the one simply insured the plaintiff's interest, without any reference to joint ownership, while the other applied to undivided property.

I do not think that this view is sustainable. All the interest which the plaintiff had for the Hartford insurance to affect was an undivided interest, so that, as a matter of fact, each policy attached itself to the same subject-matter.

It is true that the word "property" in a clause prohibiting double or over-insurance means nothing else than the interest of the insured, whatever that may be (*Springfield F. and M. Ins. Co.* v. *Allen*, 43 N. Y., 396; 2 Phil. on Ins., § 1250); but here the interest of the plaintiff under the two sets of policies was the same. All of the wool in the building owned by the plaintiff was held by him in undivided shares. It is impossible, by any juggle of words, to make his separate undivided interest different, so far as the plaintiff is concerned, from the joint interest to which he and his associate are entitled. The point was directly involved in *Mussey* v. *Atlas Mutual Insurance Company* (14 N. Y., 79). Mussey and Reid were joint owners. The court said: "If the policy in suit was on Mussey's interest, and the two first-mentioned policies were upon the interests of Mussey and Reid, a case of double insurance exists. Mussey's interest is twice insured, and if both policies could stand and be enforced according to their tenor, and unaffected by the special stipulations in respect to double and over-insurance, he would be entitled to double compensation." The same principle, under a somewhat different state of facts, was applied in *Ogden* v. *East River Insurance Company* (50 N. Y., 389). In that case, a specific parcel of property was insured by a policy containing a clause as to "other" insurance, and the same property was covered by another policy, which also included other parcels, all being insured for an entire sum. It was held that this was

" other " insurance, and the case of *Howard Insurance Company* v. *Scribner* (5 Hill, 298), to the contrary, was there overruled.

As the Hartford policies and the defendant's insurance thus cover the same " property," so far as the plaintiff is concerned, the condition in the policy is applicable, and it is void unless there is something in the attendant circumstances to prevent the application of the rule.   It is clear that the consent of the company was not given in writing on the policy.   The question to be considered is, whether such consent was waived, or whether the defendant is estopped from setting up non-compliance with the condition.

It will be observed that the agency of Bowen in the present case was very broad.   He was supplied by the defendant with blank applications and blank policies.   He effected insurances and returned them to the company.   At the time this contract was made, November 2, 1866, he issued policies, including that in litigation.   In this case, the plaintiff signed a blank application, which Bowen filled up, then issued him a policy on the same or a subsequent day, and then transmitted the application to the company as an *accepted* application. At the time of the application, the plaintiff delivered to Bowen, according to a prior request from that person, the Hartford policies, as well as the one of which the policy in litigation was substantially a renewal.   The Hartford policies had been previously issued by Bowen.

The judge, on this state of facts, refused to nonsuit the plaintiff, holding that if notice was given to Bowen of the former insurance that was sufficient, even though the required entry upon the policy was not made, and that Bowen was such an agent as to have the same power of waiver as if he were president or other authorized officer of the company, and that the whole matter must go to the jury.   The charge maintained substantially the same ground, and the defendant excepted to so much of it as instructed the jury that if they believed notice of the Hartford policies was given to Bowen at the time of the application, the plaintiff could recover.   There was also a

request to find a verdict for the defendant on these causes of action. This state of facts fairly presents an inquiry as to the power of such an agent as Bowen.

It will be observed that the defendant is a stock company in which, according to some authorities, the agents are to be construed to have larger powers than those which appertain to mutual companies. Some of the defendant's authorities, cited from the reports of Massachusetts and other States, are to be explained by this distinction, being special cases involving the powers of agents of mutual companies, in which exceptionally strict rules of construction were followed. (See *Brewer* v. *Chelsea Mut. Fire Ins. Co.*, 14 Gray, 203.)

It is clear that a person authorized to accept risks, to agree upon and settle the terms of insurance and to carry them into effect by issuing and renewing policies, must be regarded as the general agent of the company. (*Post* v. *Ætna Ins. Co.*, 43 Barb., 351.) The possession of blank policies and renewal receipts, signed by the president and secretary, is evidence of a general agency. (*Carroll* v. *Charter Oak Ins. Co.*, 40 id., 292.)

The power of such an agent of a stock company is plenary as to the amount and nature of the risk, the rate of premium, and generally as to the terms and conditions of the contract, and he may make such memoranda and indorsements, modifying the general provisions of the policy, and even inconsistent therewith, as in his discretion seems proper, before the policy is delivered and accepted, and in some cases even afterwards. (May on Ins., § 129.) He may also insert, by memorandum or indorsement, a description of the property insured inconsistent with the description of the same contained in the application, and such change will be effectual to protect the insured, although the policy itself provides that all the conditions named in the application are to be fully complied with, and that the application shall be a part of the policy and a warranty on the part of the insured. (May on Ins., § 129; *Gloucester Manuf. Co.* v. *Howard Fire Ins. Co.*, 5 Gray, 498.)

In the case at bar, Bowen was agent both for the Hartford

company and the defendant. When the Hartford policies were handed to him *at his own request,* he must have known what the object was, and had full opportunities to acquire information by reading the policies. He was clearly put upon inquiry to know their relation to the subject on hand. The plain presumption is, that he read the policies and acquired full information of their existence and contents. The notice thus supplied to him was, on general principles of the law of agency, notice to the defendant. It must be assumed, accordingly, that owing to his general agency the defendant knew that there was "other" insurance on the property, and with that knowledge made no statement of the fact on the policy. This act may be called a waiver, or may be treated as an estoppel.

The case of *Von Bories* v. *United Insurance Co.* (8 Bush [Ky.], 133) is very near to that under discussion. In that case Shea and O'Connell obtained from the insurance company (defendant) a policy upon merchandise and fixtures. On the following day they obtained further insurance in Kenton Insurance Company. Both policies were issued by one George S. Moore, who was a general agent for both companies. The policy of the first-named company provided that any subsequent insurance should be made known and indorsed in writing. Consent was not indorsed, and no actual notice, as far as appeared, given by Moore, living in Louisville, to the defendant, doing business in Covington. The court said that it could not be claimed that the defendant company did not have notice; both policies were issued by the same person, who was general agent. If Moore did not notify the defendant, that was a fault of an agent toward his principal, and did not exonerate the insurer. It was further held that the failure to take the steps required by the policy did not, in any event, make the policy absolutely void. At most, it only makes it voidable; so that the insurer, in that view, had an election either to cancel the policy or to retain the premium. This election should have been exercised within a reasonable time after notice. It had notice from the moment the general agent

issued the policy, and, by retaining the premium, has become estopped or has waived any right which it may have had to cancel the policy. This case is supported by *Horwitz* v. *Equitable Ins. Co.* (40 Mo., 557), *Hubbard* v. *Hartford Fire Ins. Co.* (33 Iowa, 325), *Couch* v. *City Fire Ins. Co.* (37 Conn., 248), *Peckren* v. *Phœnix Ins. Co.* (6 Lans., 411), *Carroll* v. *Charter Oak Ins. Co.* (10 Abb. [N. S.], 166). In all of those cases it is maintained that these conditions concerning other insurance, if broken, make the policy at most only voidable, and that there may be a waiver by parol of a condition requiring writing.

The effect of the agent of the company filling up a blank application has been already considered by this court in *Rowley* v. *The Empire Ins. Co.* (36 N. Y., 550). It was there held that an agent, authorized to take applications for insurance, should be deemed to be acting within the scope of his authority when he fills up the blank application for an insurance; and if, by his fault or negligence, it contains a material misstatement, not authorized by the instructions of the party who signs it, the wrong should be imputed to the company and not to the assured. This is a direct authority for the disposition of the case at bar, the only difference between the cases, so far as that branch of it which relates to the blank application is concerned, being, that in the one there is a case of negligent omission to state a fact of which Bowen had notice, and in the other there was a positive misstatement. This distinction does not affect the principle. See, also, *Plumb* v. *Cattaraugus County Mutual Ins. Co.* (18 N. Y., 392).

There is a number of authorities, some of which are cited by the defendant, which take a different view of the subject under discussion from that which has been maintained therein. Some of them are cases in which *statute* law required "other" insurance to be indorsed in writing on the policy, and the courts considered that they had no power to dispense with a statute requirement. Others depend upon special rules applied to mutual, as distinguished from stock companies; others still are from States that are known to adhere to constructions of

peculiar severity, *e. g.*, Massachusetts and Rhode Island. (May on Insurance, § 145.) The weight of opinion is now, throughout the country, with these later New York cases and the results of this opinion. The very recent writer just quoted, Mr. May, sums up all the cases as follows, and his generalization, after a careful examination of the authorities, is believed to be accurate: "In many policies the notice of 'other' insurance is required to be in writing and indorsed on the policy, and it has *formerly* been frequently held to be essential that these particulars should be literally complied with, and that verbal notice or any thing short of the notice and the formalities subsequent thereto required by the condition would subject the delinquent to forfeiture. Thus, where the insured, after procuring subsequent insurance, gave a memorandum of it to the agent of the company which issued the prior policy to be entered on the records, the policy not being at hand, the agent saying that such entry would answer every purpose, and the agent afterward told the insured that he had made the entry, it was held that the condition was violated" (citing many cases). "But," he adds, "the courts have become more liberal in favor of the assured in their construction of this sort of stipulation in policies of insurance. While, as we have seen, the old rule required the consent to be in writing and indorsed on the policy, it is the decided tendency of the modern cases to hold that if the notice be duly given to the company or its agent, of the additional insurance, and no objection is made, the company will be estopped from insisting on a forfeiture of the policy because their consent thereto was not indorsed, as literally required by the stipulation; and where both policies are negotiated through the same person, who is agent for both companies, his knowledge is the knowledge of each company." (May on Ins., §§ 369, 370.) Other sections of this work show that by the term "agent" in this statement is meant "general agent." (§§ 118–154.) These authorities are sustained by this text-writer by a large array of very recent decisions, some of which have already been noticed in this discussion.

It has been plausibly objected that the view of the subject herein taken is, that it is opposed to the rule that parol evidence is inadmissible to affect a written instrument. The objection, however, proceeds upon a misconception of the effect of that rule. That is but a canon of construction applied to ascertain the meaning of an instrument conceded to be valid. This has no bearing upon the point now under discussion. That concerns the validity or existence of an instrument. The defendant urges that there is a condition precedent in the instrument which, by reason of non-performance, makes the contract utterly void. The plaintiff says, in substance : " That I admit, but it has been dispensed with, and the instrument is valid." The question is accordingly not one of construction, but of validity. Nothing is better settled than that the existence of a written instrument may be established or overturned by parol evidence. There is no question of construction in such a case. It is a preliminary one, whether there is any contract to interpret or construe. It is of the nature of a condition precedent to be subject to waiver, and that may be in general either oral or written. When the waiver is established, the contract takes effect free from the condition.

The result is that as Bowen was a general agent to issue policies, and was authorized to fill up blank applications, any omission to follow the company's rules is imputable to his neglect, and is not the fault of the plaintiff. The company had constructive knowledge of the prior insurance through express or implied notice to Bowen, and are now, under all the circumstances, estopped from making any claim that the policy is void by reason of the non-observance of the required conditions.

The defendant further insists that if this be all true, it is inapplicable to the *renewal* of the Hartford policies. One of these (for $500) was renewed after the policy in suit was issued, viz., January 10, 1867. Bowen was not the agent at this time, and it is claimed that the plaintiff was bound to give notice of this renewal under the clause in the defendant's policy. It is urged that the renewal is a new contract.

This position is untenable. A renewal is in one sense a new contract, but it is not "other" insurance within the meaning of the policy. It is but a continuation of an existing insurance. It would be in the highest degree inconvenient to hold that notice must be given on every renewal to other insurers on the theory that it was a new insurance. If the notice of the original insurance is properly given, it must be held to continue through all true renewals of it. This position agrees with the views of this court in *Brown* v. *Cattaraugus County Mutual Insurance Company* (18 N. Y., 391). It is there held that the taking of a policy of insurance in renewal of the prior insurance mentioned in the application for another policy is not within the terms or spirit of the provision in the latter policy requiring notice in case of making other insurances. This doctrine is deemed to be perfectly sound, and is reaffirmed in this case.

III. The defendant's claim that the title to the wool had been changed by the oral sale to Thayer is unfounded; at most, it could only affect that portion of the wool which plaintiff owned prior to the fire, and not that to which he had title as assignee of George Pitney. The evidence showed that the whole transaction of sale rested in words. Thayer orally agreed to give the plaintiff fifty-six cents for the wool, which was to be weighed, sacked and delivered at a specified place, and the unwashed wool was to be shrunk. Payment was to be made by crediting the amount of the sale on an existing debt. No visible outward act was done in furtherance of this transaction. It is true that the plaintiff and Thayer owned the property, to a certain extent, in common, though this was not the case as to all the lots of wool; even if it was so held, it was still necessary that some *act* should be done to comply with the statute of frauds. (Per Cowen, J., in *Artcher* v. *Zeh*, 5 Hill, 200; *Shindler* v. *Houston*, 1 N. Y., 261.) The authorities are so fully collated in the case last cited that it would be a waste of time to refer to them. The eminently sound doctrine is there affirmed that there must be, to comply with the statute of frauds, something over

and above what would be sufficient to make the bargain valid at common law. There must be some overt act done subsequent to the sale, unequivocally indicating the intention of the parties. (Per Gardiner, J., p. 265, *Shindler* v. *Houston, supra.*) Reference may be made to the following cases, as applying this principle to cases resembling that at bar: *Mattice* v. *Allen* (3 Abb. Ct. App. Dec., 248 ; S. C., 3 Keyes, 492) ; *Clark* v. *Tucker* (2 Sandf., 157) ; *Ely* v. *Ormsby* (12 Barb., 570) ; *Walrath* v. *Richie* (5 Lans., 362) ; *Teed* v. *Teed* (44 Barb., 96) ; *Brabin* v. *Hyde* (32 N. Y., 519 ; reviewing 30 Barb., 265). The case last cited is quite in point. The price of the goods sold was there to be applied in payment of an existing debt, but no receipt or other evidence of payment was given to the seller. As in the present case, all that passed between the parties was mere words. The court held that the payment or discharge must be consummated at the time, so as to bind both parties by their acts, rather than by mere words. In that case there was an entry of payment (corresponding to the price of the goods) made on the books of the buyer (the creditor) though that was not communicated to the seller (or debtor). The court held that this was not sufficient to take the case out of the statute.

There was no evidence of delivery, in the case at bar, in accordance with the terms of the contract, and no writing to establish the sale ; reliance must be had solely on the proposed payment, and that, as has been shown, was not sufficient.

It is immaterial that the plaintiff supposed that the title was in Thayer. That was a mere mistake of law, having no influence on the rights of the parties. It is claimed that this supposition on his part may have diminished his watchfulness and lulled to sleep his vigilance, and that the act thus tended to " increase the risk " under a clause in the policy relating to that subject. This argument is, however, remote and speculative, and has no practical bearing upon the case. If these views are correct, it is unnecessary to consider in detail any exceptions to the charge of the judge bearing upon this branch of the cause.

The whole case was disposed of rightly in the court below, and the judgment should be affirmed.

GRAY and REYNOLDS, CC., concur; LOTT, Ch. C., and EARL, C., dissent.

Judgment affirmed.