■ EBASCO CONSTRUCTORS, INC., et al., Appellants, v AETNA INSURANCE COMPANY, Respondent, et al., Defendants. [692 NYS2d 295] —Order, Supreme Court, New York County (Charles Ramos, J.), entered October 27, 1997, which granted defendant Aetna's motion for summary judgment declaring that Aetna is not obligated under an insurance policy to defend and indemnify plaintiffs in connection with a personal injury action, and which denied plaintiffs' cross motions for leave to file a second amended complaint asserting a cause of action for reformation of the subject policy, and for partial summary judgment against Aetna, unanimously reversed, on the law, with costs, Aetna's motion for summary judgment denied, plaintiffs' cross motion for leave to file a second amended complaint granted and plaintiffs are awarded partial summary judgment reforming the policy as requested and declaring that Aetna must defend and indemnify plaintiffs in the underlying personal injury action. Appeal from order, same court and Justice, entered April 24, 1998, which insofar as appealable, denied plaintiffs' motion for renewal, unanimously dismissed, without costs, as academic.

Plaintiff Nassau District Energy Corp. (NDEC) hired plaintiff Ebasco Constructors, Inc. (Ebasco) as general contractor on a construction project at the Nassau County Central Utility Plant, which is owned by NDEC. In October 1990, Ebasco subcontracted the installation of piping and mechanical systems for the project to defendant The Norman Company (Norman). The subcontract agreement required Norman to obtain endorsements on its insurance policies naming Ebasco and NDEC as additional insureds. Norman maintained commercial general liability insurance coverage with defendant Aetna Insurance Company (Aetna). Through Aetna's insurance agent, defendant Mark J. Jacoby Assocs., Inc. (Jacoby), Norman obtained two additional insured endorsements as required by the subcontract.

The first endorsement is entitled "ADDITIONAL INSURED—MANAGERS OR LESSORS OF PREMISES" (hereinafter landlord endorsement), and states that it is applicable to entities named in an accompanying schedule "but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you". The schedule for this endorsement lists NDEC as an additional insured, and, apparently mistakenly, names NDEC and Ebasco in the area for "DESIGNA-

TION OF PREMISES (PART LEASED TO YOU)." The second endorsement, entitled "ADDITIONAL INSURED—OWNERS, LESSEES OR CONTRACTORS" (hereinafter contractor endorsement), lists only Norman's landlord, Industrial & Research Assoc., Inc. (Industrial), on the schedule as an additional insured. Ebasco is not mentioned on the contractor endorsement. Although the subcontract gave Ebasco the right to receive a copy of the insurance policy naming it as an additional insured, Ebasco never requested one.

On February 27, 1991, a Norman employee, Edward Banschback, slipped and fell on a patch of ice while performing work on the project. In October 1992, Banschback and his wife commenced an action for personal injuries against Ebasco and NDEC (Banschback action), which ultimately resulted in a jury verdict finding Ebasco 100% liable, and awarding damages of $3.5 million to plaintiffs.[1] Previously, Ebasco requested that Aetna assume its defense in the Banschback action. By letter dated August 15, 1995, Aetna declined to assume Ebasco's defense, stating that Ebasco's additional insured endorsement would only be triggered "with respect to liability that arises out of our insured's ownership, maintenance or use of the premises". Since Norman was neither a lessee, nor was required by the subcontract to maintain the premises, Aetna asserted that the policy did not require it to defend or indemnify Ebasco.

In December 1995, plaintiffs commenced the instant action against Aetna seeking a declaration of their entitlement to a defense and indemnification by Aetna in the Banschback action. In March 1996, plaintiffs served an amended complaint which added causes of action against Norman and Jacoby for failing to obtain the required endorsements required by the subcontract.[2]

In February 1997, Aetna moved for summary judgment and a declaration that it is not obligated to defend or indemnify plaintiffs in the Banschback action. Aetna, consistent with its disclaimer, argued that since Norman was not a lessee, but rather a subcontractor working at the site, no coverage existed under the landlord endorsement.

Plaintiffs opposed the motion, arguing that discovery was incomplete since there had been no depositions and limited document production. They further argued that the landlord

---

1. The court reduced the verdict to $2.5 million.

2. Subsequent to the order on appeal, the IAS Court granted plaintiffs' motion for partial summary judgment against Norman for breach of contract to obtain insurance coverage.

endorsement was ambiguous or, alternatively, that it should be reformed to reflect the true intent of the parties, i.e., that Ebasco was to be named as an additional insured on Norman's policy covering it for liability arising out of Norman's subcontracting work. In support of its reformation claim, plaintiffs submitted the certificate of coverage, which indicated that Norman was a subcontractor for the project, and not a lessee.

In March 1997, plaintiffs cross-moved for leave to file a second amended complaint adding a cause of action for reformation of the policy. Aetna responded that the certificate of coverage was informational only and did not create coverage, and that further discovery would not uncover new information, especially since Aetna had routinely purged their files, including those relating to the subject policy, when its offices relocated in August 1996.

In April 1997, plaintiffs cross-moved for partial summary judgment declaring the policy reformed, and for a declaration of their rights under the reformed policy. This cross motion was supported by an affidavit of Janet Falco, a vice-president of Jacoby, the insurance agent that had procured the subject policy for Norman. Falco stated that upon her review of the policy in January 1991, she discovered that Ebasco, the general contractor, had been erroneously listed on the landlord endorsement, and Norman's landlord had been erroneously listed on the contractor endorsement. Realizing that Aetna had "issued the wrong additional insured endorsements for these entities", she notified Aetna of the error and requested that it be corrected. Falco further stated that, although Jacoby no longer had the corrected documents which had been destroyed in a flood, she remembered that a similar error had existed in a previous year's policy which had been corrected.

Aetna notes that papers submitted in support of plaintiff's motion revealed that plaintiffs had executed a stipulation of discontinuance in favor of Jacoby, which was held in escrow pending Falco's deposition in the instant matter.

The IAS Court granted Aetna's motion for summary judgment, and denied plaintiffs' cross motions for leave to amend the complaint and for summary judgment. The court rejected plaintiffs' claim for reformation of the policy based on mutual mistake, stating that the "curious" Falco affidavit was "unsubstantiated by any corroboration" and is "too late in the day to raise an issue of fact as to what were the true intentions of Aetna with respect to the policy." The court further found the prejudice to Aetna to be "obvious." Plaintiffs' motion for reargument and renewal, based on the deposition testimony of Falco (which was consistent with her affidavit), was denied.

Plaintiff's cross motion for leave to file a second amended complaint should have been granted. "Leave to amend pleadings 'shall be freely given' absent prejudice or surprise resulting directly from the delay (CPLR 3025, subd [b]; *Fahey v County of Ontario*, 44 NY2d 934, 935)." (*McCaskey, Davies & Assocs. v New York City Health & Hosps. Corp.*, 59 NY2d 755, 757.) Aetna has failed to make any showing that the proposed amendment would prejudice its defense in this action (*see, City of New York v Cross Bay Contr. Corp.*, 235 AD2d 10, 14, *revd on other grounds* 93 NY2d 14; *see also, Acevedo v Holton*, 239 AD2d 194, 195), or would result in unfair surprise. On the contrary, Aetna has been aware of the possible errors in the endorsements since August 1995, when it declined to assume Ebasco's defense based on the specific language therein.

Plaintiffs have further established that the reformation cause of action sought to be added is meritorious. A written agreement may be reformed for mutual mistake where "the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement" (*Chimart Assocs. v Paul*, 66 NY2d 570, 573). " 'Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected' " (*Harris v Uhlendorf*, 24 NY2d 463, 467, quoting *Born v Schrenkeisen*, 110 NY 55, 59).

The uncontradicted evidence offered by plaintiffs overwhelmingly establishes the occurrence of a scrivener's error, justifying the remedy of reformation (*see, Harris v Uhlendorf, supra*). It is undisputed that the subcontracting agreement required Norman to obtain additional insured endorsements for both NDEC and Ebasco, the owner and general contractor. Further, the structure and language of the endorsements demonstrate that Ebasco should have been listed in the contractor endorsement, but was not. Instead, Ebasco was listed in the landlord endorsement under the heading "DESIGNATION OF PREMISES"—which is an obvious error since there is no accompanying address or location. Further, Norman's landlord, who apparently had nothing to do with the project, was erroneously listed on the contractor's endorsement. These glaring errors support plaintiff's argument that the insurance policy should be reformed on the ground of mutual mistake so as to reflect the true intentions of the parties (*see, Consolidated Edison Co. v General Acc. Ins. Co.*, 204 AD2d 164, 165 [amendment to include reformation claim properly allowed where insurer may have mistakenly attached leased premises endorsement instead

of contractor endorsement]; *Anand v GA Ins. Co.*, 228 AD2d 397, 398 [where identity of owner is misdescribed as a result of innocent mistake, error is mutual for purposes of reformation, even if insurer is unaware of error]).

Partial summary judgment on the reformation claim is also appropriate. In addition to the policy provisions, plaintiffs submitted the Falco affidavit, in which she averred that she discovered the errors at issue and reported them to Aetna. She further states that she made the same corrections the previous year, and plaintiffs submitted the certificate of insurance from that year indicating that both plaintiffs were covered as additional insureds for "all operations" arising out of Norman's work. Aetna, on the other hand, offered only conclusory denials of mutual mistake, and no admissible evidence contradicting plaintiffs' persuasive assertions of scrivener's error.

Notwithstanding the unusual circumstances of escrowing the stipulation of discontinuance with Falco's employer, Jacoby, pending completion of her deposition, such evidence was improperly rejected on credibility grounds. Credibility is generally not relevant in determining a motion for summary judgment. In any event, the IAS Court overlooked the fact that Falco's averments were entirely consistent with the provisions of the policy and the subcontract in establishing a scrivener's error. Accordingly, plaintiffs motion for partial summary judgment declaring that Aetna must defend and indemnify Ebasco under the terms of the reformed policy is granted.

Plaintiffs' request for attorneys' fees is denied. "It is well established that an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy (*Mighty Midgets v Centennial Ins. Co.*, 47 NY2d 12, 21; *Grimsey v Lawyers Tit. Ins. Corp.*, 31 NY2d 953; *Doyle v Allstate Ins. Co.*, 1 NY2d 439)." (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 324.) Nor, on the present record, have plaintiffs made a sufficient showing that Aetna's refusal to defend constituted bad faith. Concur— Ellerin, P. J., Rosenberger, Tom and Mazzarelli, JJ.