Imrie v Ratto (2020 NY Slip Op 05986)





Imrie v Ratto


2020 NY Slip Op 05986


Decided on October 22, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 22, 2020

528858

[*1]Daniel F. Imrie II, Appellant,
v
Andrew R. Ratto et al., Defendants, and Erie Insurance Company, Respondent. (Action No. 1.)
Daniel F. Imrie II, Individually and as Assignee of Andrew R. Ratto et al., Appellant,
v
Jeffrey D. Howard et al., Respondents. (Action No. 2.)

Calendar Date: September 14, 2020

Before: Garry, P.J., Clark, Devine, Pritzker and Colangelo, JJ.


The Clements Firm, Glens Falls (Thomas G. Clements of counsel), for appellant.
Rupp Baase Pfalzgraf Cunningham LLC, Buffalo (Marco Cercone of counsel), for Erie Insurance Company, respondent.
Maynard, O'Connor, Smith & Catalinotto, LLP, Albany (Lia B. Mitchell of counsel), for Jeffrey D. Howard and another, respondents.



Garry, P.J.
Appeals (1) from an amended judgment of the Supreme Court (Auffredou, J.), entered February 26, 2019 in Warren County, which, in action No. 1, among other things, denied plaintiff's motion for partial summary judgment, and (2) from an order of said court, entered May 15, 2019 in Warren County, which, among other things, (a) granted a motion by defendant Erie Insurance Company for summary judgment dismissing the second amended complaint in action No. 1 and the amended complaint in action No. 2 against it, and (b) in action No. 2, granted a motion by defendants Jeffrey Howard and Adirondack Regional Insurance Agency, Inc. for summary judgment dismissing the amended complaint against them.
In November 2009, plaintiff leased his auto repair business and garage to defendant Andrew R. Ratto, a principal in Ratto Restorations, Inc. (hereinafter the corporation). Defendant Jeffrey D. Howard, an insurance agent employed by defendant Adirondack Regional Insurance Agency, Inc., procured a property insurance policy (hereinafter the property policy) and a garage liability insurance policy (hereinafter the liability policy) for the business and property from defendant Erie Insurance Company. Plaintiff was named as an additional insured on the liability policy and, after some initial changes, the corporation was named as the insured on both policies. Plaintiff then sold the business and property to Ratto in March 2010. Ratto financed the purchase by giving plaintiff two mortgages on the property. Both mortgages obliged Ratto to insure the property against "loss by fire" and to include "the standard New York [m]ortgage clause" naming plaintiff as the mortgagee.
After the closing, Ratto's wife, Catherine McDonough-Ratto (hereinafter the wife), the other principal in the corporation, advised Howard of the purchase and asked him to have plaintiff named as the mortgagee on the property policy. Howard agreed to do so, but sent the wrong form to Erie and, thus, inadvertently instructed Erie to add plaintiff as a mortgagee on the liability policy. Erie did not respond to this request or to Adirondack's follow-up request about a month later. Plaintiff was not named as a mortgagee in the property policy that Erie ultimately issued or in subsequent renewals.
In July 2013, after Ratto failed to make mortgage payments and plaintiff learned that a tax foreclosure action had been commenced against the property, plaintiff commenced action No. 1 against Ratto, seeking foreclosure of the mortgages. A week later, a fire destroyed the garage and the business.[FN1] Plaintiff then learned that he was not named as a mortgagee on the property policy and that the corporation, rather than Ratto, was the named insured.[FN2] Erie refused to pay the proceeds of the property policy to Ratto or the corporation because of alleged lack of cooperation, and denied plaintiff's claim as a mortgagee because he was not so identified in the property policy.
Pursuant to a second amended complaint in action No. 1, plaintiff asserted an additional claim of breach of contract against Ratto and a claim against Erie seeking a judgment declaring plaintiff's rights under the property policy and asserting that plaintiff had an equitable lien on the proceeds or, in the alternative, was entitled to reformation of the property policy to name plaintiff as the mortgagee. Erie moved for summary judgment dismissing the second amended complaint against it, and plaintiff opposed on the ground, among other things, that Erie had failed to comply with his discovery demands. Supreme Court granted Erie's motion. Upon plaintiff's appeal, this Court reversed, finding that Erie's motion was premature because of the incomplete discovery (145 AD3d 1358 [2016]).
Meanwhile, plaintiff obtained an assignment of the property policy from Ratto and the corporation and commenced action No. 2 asserting, in an amended complaint, claims against (1) Erie — both as an assignee and in his individual capacity as a third-party beneficiary of the property policy — for breach of contract, reformation and unjust enrichment, (2) Adirondack individually for breach of contract, and (3) Erie, Howard and Adirondack (hereinafter collectively referred to as defendants), as assignee and individually for negligence, promissory estoppel and a declaratory judgment.[FN3] Following the first appeal and the completion of discovery, plaintiff moved for (1) partial summary judgment on his claims against Ratto and for approximately $145,000 in counsel fees and disbursements, (2) partial summary judgment against Erie on his individual claim for reformation of the property policy and payment to him of the amount owed thereunder, and (3) partial summary judgment against Howard and Adirondack for payment to him of the amount owed under the property policy and for plaintiff's counsel fees and disbursements in litigating its claims against Erie. Erie cross-moved for summary judgment dismissing the second amended complaint in action No. 1 and the amended complaint in action No. 2. Adirondack and Howard cross-moved for reformation of the property policy and for summary judgment dismissing both complaints and Erie's cross claims.
Ratto did not oppose plaintiff's motion. In February 2019, Supreme Court partially granted the motion to the extent that it sought summary judgment on plaintiff's claims against Ratto and issued an amended judgment that, among other things, awarded plaintiff $25,000 in counsel fees. In a separate order issued in May 2019, the court denied the remaining claims in plaintiff's motion, granted Erie's motion in its entirety, granted Howard and Adirondack's motion to the extent that it sought dismissal of the complaints and Erie's cross claims and otherwise denied it, and dismissed the second amended complaint in action No. 1, the amended complaint in action No. 2, and the cross claims. Plaintiff appeals from the February 2019 amended judgment and from the May 2019 order.
Turning first to plaintiff's motion for partial summary judgment on his claim for reformation of the property policy, "[t]he province of reformation is to make a writing express the bargain which the parties desired to put in writing. There must have been a meeting of the minds of the contracting parties concerning the agreement, or agreements, which the court is asked to declare existent" (Lewitt & Co., Inc. v Jewelers' Safety Fund Socy., 249 NY 217, 221 [1928] [internal quotation marks and citations omitted]). As the party seeking reformation, it was plaintiff's burden to show, "by clear and convincing evidence, that the writing in question was executed under mutual mistake or unilateral mistake coupled with fraud" and to demonstrate "in no uncertain terms, not only that mistake or fraud exists, but exactly what was really agreed upon between the parties" (Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1255-1256 [2016] [internal quotation marks and citations omitted]; see Vollbrecht v Jacobson, 40 AD3d 1243, 1245 [2007]).[FN4] Reformation may be granted when clear and convincing evidence establishes that the parties reached an oral agreement that, without their knowledge, was not embodied in the subsequent written contract (see Chimart Assoc. v Paul, 66 NY2d 570, 573 [1986]; Loyalty Life Ins. Co. v Fredenberg, 214 AD2d 297, 299 [1995]).
Plaintiff asserts that reformation of the property policy to name him as the mortgagee is appropriate because the undisputed evidence demonstrates that Ratto, the wife, Howard and Adirondack intended to have him so named and reached an oral agreement to that effect, but that, without their knowledge and because of mutual mistake, the property policy did not embody that agreement. In support of this claim, plaintiff submitted the uncontradicted testimony of Ratto and the wife that they were aware of the requirement to have plaintiff named as a mortgagee on the property policy as required by the mortgages and intended to comply with it, that the wife asked Howard to make the change, and that she and Ratto believed afterward that the change had been made and that plaintiff had become a mortgagee on the property policy. Howard testified that he received the request and agreed to fulfill it, and that he or an Adirondack employee attempted to do so by uploading a policy change request form into a proprietary electronic system used by Erie to communicate with its agents. He stated that the wrong form was used, so that the change was inadvertently requested in the liability policy, rather than the property policy. When Erie did not respond after several weeks, Howard or another Adirondack employee followed up by sending a fax that repeated the request. Erie again failed to respond, and no further follow-up was carried out. Howard testified that he received and reviewed the original property policy and renewals thereafter, but did not notice that plaintiff was not named as a mortgagee.
Plaintiff further submitted documents supporting his claims and the testimony outlined above. These submissions included a document from Adirondack's files indicating that the wife had informed Adirondack of the change in ownership and that plaintiff was the mortgagee, as well as a second document dated in March 2010 stating that plaintiff had been "changed . . . to mortgagee not [additional insured]." There was also a policy change request form, printed from Erie's electronic communication system and dated in March 2010, by which Adirondack directed Erie to name plaintiff as a mortgagee. Printed language on the form indicated that it was to be used for changes in garage liability policies. Plaintiff also submitted a fax cover sheet from Adirondack to Erie dated about a month later, indicating that this was a second request and attaching a copy of the March 2010 policy change request form.
Finally, plaintiff submitted the testimony of an Erie representative that a request to add a mortgagee to a liability policy was "an impossible change," that someone at Erie should have noticed the error and contacted Adirondack for clarification, and that failing to do so or to take any action on the request was inconsistent with Erie's procedures and was "not an option." Plaintiff thus met his prima facie burden to demonstrate that the property policy should be reformed by "showing a mutual mistake by clear and convincing evidence" (Essex Ins. Co. v George E. Vickers, Jr., Enters., Inc., 103 AD3d 684, 688 [2013] [internal quotation marks and citation omitted]).
In response, Erie neither identified a triable issue of fact as to whether the failure to name plaintiff as mortgagee resulted from anything but its agent's mistake, nor showed that it would not have accepted the risk of providing coverage to plaintiff as mortgagee (see id.; Cheperuk v Liberty Mut. Fire Ins. Co., 263 AD2d 748, 749 [1999]; Zielinski v Associated Mut. Ins. Co., 217 AD2d 938, 938 [1995]; Court Tobacco Stores v Great E. Ins. Co., 43 AD2d 561, 562 [1973]). We reject Erie's claim that there was no mistake because it had no notice that plaintiff was the mortgagee. The record establishes that Adirondack was Erie's licensed agent such that, under general principles of agency, Adirondack's undisputed knowledge of the parties' intent was imputed to Erie as the principal (see Pitney v Glen's Falls Ins. Co., 65 NY 6, 22-23 [1875]; Ribacoff v Chubb Group of Ins. Cos., 2 AD3d 153, 154-155 [2003]).[FN5] We note that the property policy provided that asking Erie's agent for a change "[was] the same as asking [Erie]." Further, as previously noted, Erie's representative testified that the two communications from Adirondack identifying plaintiff as a mortgagee and mistakenly asking to have him added to the liability policy should have placed Erie on notice of a problem requiring clarification.[FN6] Finally, Erie's assertion that plaintiff failed to protect his own interests by discovering the error before the loss occurred does not preclude reformation, as the dispositive issue in this context is whether a mutual mistake occurred at the time of the initial oral agreement and issuance of the property policy (see Lewitt & Co., Inc. v Jewelers' Safety Fund Socy., 249 NY at 223-224; Court Tobacco Stores v Great E. Ins. Co., 43 AD2d at 562; Paskie & Co., Inc. v Commercial Cas. Ins. Co., 223 App Div 603, 610-611 [1928]).
Thus, we find that the property policy should be reformed to name plaintiff as mortgagee (see 313-315 W. 125th St. L.L.C. v Arch Specialty Ins. Co., 138 AD3d 601, 602-603 [2016]; Essex Ins. Co. v George E. Vickers, Jr., Enters., Inc., 103 AD3d at 688; Ebasco Constructors v Aetna Ins. Co., 260 AD2d 287, 290-291 [1999]; see also Bank of Richmondville v Terra Nova Ins. Co., 263 AD2d 786, 786 [1999]).[FN7] Plaintiff's resulting identification as the mortgagee "creates an independent insurance of [his] interest just as if he had received a separate policy from the company but without any inconsistent or repugnant conditions imposed upon the owner and free from invalidation by the latter's act or neglect" (Syracuse Sav. Bank v Yorkshire Ins. Co., Ltd., 301 NY 403, 407 [1950] [emphasis, internal quotation marks and citation omitted]; see Murray v North Country Ins. Co., 277 AD2d 847, 849 [2000]). As such, plaintiff has the right to recover as the named mortgagee under the reformed property policy, and that right is not affected by Erie's defense of alleged noncooperation by Ratto and/or the corporation. Accordingly, plaintiff's motion for partial summary judgment reforming the property policy and awarding him damages to the extent of his rights under that policy should have been granted, and Erie's motion for summary judgment dismissing plaintiff's claims should have been denied to this extent.
Turning next to plaintiff's motion for partial summary judgment against Howard and Adirondack, plaintiff asserts claims against these defendants for recovery of damages for the sum due under the property policy and the reasonable costs of his litigation against Erie. However, Howard and Adirondack "stand[] in the shoes of [Erie]" relative to these claims (Thompson & Bailey, LLC v Whitmore Group, Ltd., 34 AD3d 1001, 1002 [2006], lv denied 8 NY3d 807 [2007]). Our determination that the property policy must be reformed and that Erie must pay the amount due to plaintiff means that Howard and Adirondack cannot also be held liable to him for that amount, as plaintiff apparently concedes upon appeal; the claim for amounts due under the property policy as against Howard and Adirondack has thus been rendered academic. As to his claim for reimbursement from Howard and Adirondack for his litigation expenses against Erie, plaintiff acknowledges the established "American rule" that a litigant can only recover counsel fees and disbursements from an adversary where authorized by statute, contract or otherwise (Hunt v Sharp, 85 NY2d 883, 885 [1995] [internal quotation marks omitted]), and thus relies upon the exception known as the Shindler rule. Under this rule, "[i]f, through the wrongful act of [a] present adversary, a person is involved in earlier litigation with a third person in bringing or defending an action to protect his [or her] interests, he [or she] is entitled to recover the reasonable value of attorneys' fees and other expenses thereby suffered or incurred" (Shindler v Lamb, 25 Misc 2d 810, 812 [Sup Ct, NY County 1959], affd 10 AD2d 826 [1960], affd 9 NY2d 621 [1961]; see Hermann v Bahrami, 236 AD2d 516, 516 [1997]; Badik v Murphy, 160 AD2d 1199, 1200 [1990]; Fugazy Travel Bur. v Ernst & Ernst, 31 AD2d 924, 925 [1969]).
Plaintiff argues that he is entitled to recover his counsel fees and disbursements in his litigation against Erie from Howard and Adirondack because that litigation was necessitated by their wrongful acts in failing to have him named as a mortgagee. As discussed above, however, "an insurance [agent] who negligently fails to procure a policy stands in the shoes of the insurer and is liable to the insured up to the limit of the insurance policy had it been in force" (Thompson & Bailey, LLC v Whitmore Group, Ltd., 34 AD3d at 1002). As such, Erie is not a third party, and the Shindler rule does not permit plaintiff to recover litigation expenses from Howard and Adirondack that he could not have recovered in an affirmative action against Erie (see Chase Manhattan Bank v Each Individual Underwriter Bound to Lloyd's Policy No. 790/004A89005, 258 AD2d 1, 5-6 [1999]; see also Hunt v Sharp, 85 NY2d at 885-886; Nardiello v Stone, 235 AD2d 681, 685 [1997]; see generally New York Univ. v Continental Ins. Co., 87 NY2d 308, 324 [1995]). Accordingly, plaintiff may not recover the expenses of his litigation against Erie from Adirondack and Howard. Plaintiff's remaining claims against these defendants and Erie, to the extent not specifically discussed herein, are academic or without merit.
Finally, plaintiff contends that Supreme Court erred in reducing his claim against Ratto for counsel fees from the requested sum of about $145,000 to $25,000. Plaintiff's request was supported by affidavits and invoices detailing the basis for the claimed sums, and was unopposed.[FN8] Factors that a trial court may take into account in determining the amount of a counsel fee award "include the time, effort and skill required; the difficulty of the questions presented; the responsibility involved; counsel's experience, ability and reputation; the fee customarily charged in the locality; and the contingency or certainty of compensation" (Hinman v Jay's Vil. Chevrolet, 239 AD2d 748, 749 [1997] [internal quotation marks and citations omitted]). Because the trial court is in the best position to evaluate these factors, its determination will not be disturbed in the absence of an abuse of discretion (see Matter of Connolly v Chenot, 293 AD2d 854, 855 [2002]). "Nonetheless, to permit intelligent review, a court must provide a concise but clear explanation of its reasons for the fee award" (Ricciuti v Lombardi, 256 AD2d 892, 893 [1998] [internal quotation marks and citations omitted]; accord Lehman Commercial Paper, Inc. v Point Prop. Co., LLC, 146 AD3d 1192, 1196 [2017]). Here, Supreme Court's one sentence determination merely referenced the existence of factors to be considered, but failed to explain or analyze the fee award in any manner. We are thus unable to review plaintiff's claim that the award was an abuse of discretion. Accordingly, we remit the matter to Supreme Court for further evaluation and a determination setting forth an analysis of the appropriate factors and reasons for the award (see Matter of Saxton v New York State Dept. of Taxation and Fin., 130 AD3d 1224, 1226 [2015]; Ricciuti v Lombardi, 256 AD2d at 893; Burke v Crosson, 191 AD2d 998, 998-999 [1993]).
Clark, Devine, Pritzker and Colangelo, JJ., concur.
ORDERED that the amended judgment is modified, on the law, without costs, by reversing so much thereof as awarded counsel fees and disbursements to plaintiff; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as (1) denied plaintiff's motion in action Nos. 1 and 2 for summary judgment on his claims against defendant Erie Insurance Company for reformation of the property insurance policy and payment to plaintiff of the policy proceeds and (2) granted said defendant's cross motion for summary judgment dismissing the second amended complaint in action No. 1 and the amended complaint in action No. 2 against it to this extent; plaintiff's motion granted and said defendant's motion denied to that extent; and, as so modified, affirmed.



Footnotes

Footnote 1: At the time of the fire, the liability policy had been canceled for nonpayment of premiums, but the property policy remained in effect.

Footnote 2: This was contrary to the requirements set forth within the mortgages.

Footnote 3: Supreme Court denied plaintiff's motion to consolidate the actions but ordered them to be joined for trial.

Footnote 4: We reject Erie's claim — previously raised and implicitly rejected upon the prior appeal — that, because the property policy does not name plaintiff as a mortgagee, he lacks standing to seek reformation. The fact that a party's interest is not stated within the four corners of a writing does not preclude the party from seeking reformation to protect that interest, if the party demonstrates by the requisite clear and convincing evidence that the remedy is otherwise appropriate (see e.g. Snell v Ins. Co., 98 US 85, 88-92 [1878] [partnership was entitled to reformation of insurance policy that, due to mutual mistake, did not identify the partnership as the named insured]; 313-315 W. 125th St. L.L.C. v Arch Specialty Ins. Co., 138 AD3d 601, 602-603 [2016] [property owners were entitled to reformation of insurance policy where, due to mutual mistake, another entity was named as owner in the policy and the owners were not named]).

Footnote 5: Insofar as our record reveals, Erie's contention that Howard and Adirondack were brokers, rather than agents, was raised for the first time upon this appeal and, thus, is not properly before this Court (see e.g. Sager v County of Sullivan, 145 AD3d 1175, 1177 [2016], lv denied 29 NY3d 902 [2017]).

Footnote 6: Erie's claim that plaintiff did not establish that it received the policy change form is without merit. Howard's testimony and that of Erie's representative established that agents communicated with Erie by uploading documents into a proprietary electronic system, that once documents were so uploaded they were automatically provided to Erie and that the presence of the policy change request form in the system indicated that it had been uploaded. Moreover, Adirondack's second request was sent by fax, and Erie has not claimed that it did not receive that transmission.

Footnote 7: We further find that the property policy should be reformed to identify Ratto, rather than the corporation, as the named insured. "The name of the insured in the policy is not always important if the intent to cover the risk is clear" (Court Tobacco Stores v Great E. Ins. Co., 43 AD2d at 561 [internal quotation marks and citations omitted]). It is undisputed that the parties intended to cover the risk posed by the property and the garage business and that the risk was not altered by the misidentification of the corporation as the owner. There was no intent to deceive Erie, and Erie has not demonstrated that it would not have covered the risk if Ratto had been the original named insured (see Cheperuk v Liberty Mut. Fire Ins. Co., 263 AD2d at 749-750; New York Cas. Ins. Co. v Shaker Pine, 262 AD2d 735, 736-737 [1999]; Matter of Galaxy Ins. Co., 257 AD2d 351, 352 [1999]; Crivella v Transit Cas. Co., 116 AD2d 1007, 1008 [1986]; Court Tobacco Stores v Great E. Ins. Co., 43 AD2d at 561).

Footnote 8: Plaintiff's appeal on this point is likewise unopposed, as Ratto did not participate in the appeal and defendants took no position on this issue.